**In re WEEKS MARINE, INC., Relator.**

No. 14–07–00501–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 20, 2007.

Kenneth G. Engerrand, Houston, TX, for appellants.

Jeffrey L. Raizner and Michael P. Doyle, Houston, TX, for appellees.

Panel consists of Justices YATES, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this original proceeding, relator Weeks Marine, Inc. ("Weeks Marine") seeks a writ of mandamus directing the respondent, Levi Benton, presiding judge of the 215th District Court of Harris County, (1) to vacate (a) his October 31, 2006 order denying Weeks Marine's motion to compel arbitration and (b) his May 3, 2007 order denying Weeks Marine's motion for reconsideration of the October 31 order, and (2) to stay court proceedings and compel the parties to arbitration of their dispute(s). We grant the petition in part and deny in part.

## UNDERLYING FACTS AND PROCEDURAL HISTORY

Jose Jimenez was injured in April, 2006, on a deck barge in a shipyard during the course and scope of his employment with Weeks Marine. Several days after the injury, Jimenez executed a Claim Arbitration Agreement ("the Agreement") in which he agreed to arbitrate any claims arising from his injury in exchange for Weeks Marine's agreeing to advance certain sums to Jimenez. Under the Agreement, the advances were to be credited against any recovery Jimenez may ultimately have against Weeks Marine, whether by settlement or award, arising from the injury. The Agreement called for the advances to be paid from the date Jimenez was injured until the earlier of (1) his being declared fit for duty; (2) his reaching maximum medical improvement; or (3) six months of payments.

Two months after the incident giving rise to his injury, Jimenez brought suit against Weeks Marine under the Jones Act and general maritime law, asserting that Weeks Marine's negligence and the unseaworthiness of its vessel caused his injury. Jimenez refused Weeks Marine's demand to submit the claims to arbitration, although he continued to accept payment of advances under the Agreement. Weeks Marine paid the advances for six months, with a total of $20,602.50 paid to Jimenez.

Weeks Marine filed a motion to compel arbitration in the trial court, which denied the motion after briefing and a hearing. Approximately three months later, Weeks Marine filed a motion for reconsideration of its motion to compel arbitration. Weeks Marine's motion for reconsideration was based on a then-new decision of the United States Court of Appeals for the Fifth Circuit, in which that court affirmed an order requiring an injured employee to arbitrate claims under a post-injury agreement similar to the Agreement at issue in this case. After additional briefing and another hearing, the trial court denied the motion for reconsideration and refused to alter its order denying Weeks Marine's motion to compel arbitration. Weeks Marine then filed this mandamus proceeding, seeking relief from the orders denying its motion to compel arbitration and its motion for reconsideration.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when the abuse cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)

(orig.proceeding). Whether Weeks Marine has an adequate remedy by appeal depends on whether the Agreement is subject to, or excepted from, the Federal Arbitration Act ("FAA").[1] A party has no remedy by appeal in state court for the wrongful denial of its right to arbitrate under an agreement subject to the FAA. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992) (orig.proceeding); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding).[2] Jimenez argues the Agreement in this case is excepted from the FAA. If so, Weeks Marine has a remedy by interlocutory appeal under the Texas General Arbitration Act ("TAA")[3] and mandamus relief is not appropriate.

If the Agreement is not excepted from FAA coverage, so that mandamus relief is at least theoretically available, Weeks Marine's right to such relief depends on whether the trial court abused its discretion by refusing to compel arbitration. On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court could have reached but one decision (and not the decision it made). *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding); *Walker,* 827 S.W.2d at 839–40. Mandamus review of issues of law is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex.2005) (orig.proceeding).

## ISSUES PRESENTED

Jimenez contends that the Agreement is excluded from the FAA by virtue of Section 1 of the statute. Section 1 states, in pertinent part, "nothing herein contained shall apply to contracts of employment of seamen." *See* 9 U.S.C.A. § 1 (1999). As explained below, we conclude that (1) the Agreement is not a contract of employment of a seaman, (2) the Agreement is subject to the FAA, and therefore (3) mandamus is a proper procedure by which Weeks Marine may obtain relief from the trial court's refusal to compel arbitration of Jimenez's claims.

Having thus determined that Weeks Marine is properly before this court by original proceeding for writ of mandamus, we next address whether the trial court abused its discretion in denying the motion to compel arbitration. In the trial court, in opposition to Weeks Marine's motion to compel arbitration, Jimenez contended that the Agreement is not enforceable under the FAA because:

- post-injury agreements between a seaman and his employer are invalid under Section 5 of the Federal Employers' Liability Act;

the Texas Supreme Court granted mandamus relief to the party whose rights had been wrongfully denied under the FAA-governed arbitration agreement. *Id.* at 780–81. Because the Court granted mandamus relief in that case and has not overruled *Jack B. Anglin,* we conclude mandamus review remains available for wrongful denial of arbitration rights under an agreement subject to the FAA.

---

1. 9 U.S.C. § 1 *et seq.*

2. *But see In re D. Wilson Constr. Co.,* 196 S.W.3d 774 (Tex.2006). In *In re D. Wilson,* the Texas Supreme Court concluded the court of appeals had wrongly dismissed, for want of jurisdiction, a party's TAA-based interlocutory appeal from the trial court's denial of the party's arbitration rights under an FAA-governed agreement. *Id.* at 778–80. Given this conclusion, one might postulate that such party is not entitled to mandamus relief because the interlocutory appeal is an adequate remedy. However, in *In re D. Wilson* itself,

3. Tex. Civ. Prac. & Rem.Code § 171.098(a)(1).

- the Agreement does not meet the stringent standards applied by the United States Supreme Court to agreements that diminish a seaman's substantive rights; and

- under Texas law, the Agreement is procedurally and substantively unconscionable.

■ The trial court addressed only the first of these contentions in its order denying arbitration, but the order provides that arbitration is denied "[f]or reasons not expressly limited hereto." An order denying arbitration must be upheld if it is proper on any basis considered by the trial court. *In re H.E. Butt Grocery Company*, 17 S.W.3d 360, 367 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding); *In re R & R Personnel Specialists of Tyler, Inc.*, 146 S.W.3d 699, 703 (Tex.App.-Tyler 2004, orig. proceeding). Accordingly, we review all arguments presented.

## ANALYSIS

### A. Is the Agreement a contract of employment of a seaman and, therefore, unenforceable under the FAA?[4]

■ As a preliminary matter, Weeks Marine asserts that the trial court improperly placed the burden on Weeks Marine to prove that the Agreement was not subject to exclusion under the FAA. The order denying arbitration states:

4. Weeks Marine does not dispute that Jimenez is a seaman for purposes of FAA Section 1. Thus, our analysis concerns only whether the Agreement constitutes a contract of employment.

5. In this regard, Weeks Marine cites *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (party seeking to avoid arbitration bears burden of showing that prohibitive cost of arbitration renders agreement substantively unconscionable); *Gilmer v. Interstate/Johnson*

Weeks offers no evidence to establish what is within and without "plaintiff's employment contract." While this Court does not find the [Agreement] Weeks seeks to enforce here to be within any such contract, it was Weeks [sic] burden to establish that it was not. They failed to do so.

Weeks Marine disputes the trial court's allocation of the burden of proof and contends that a party seeking to avoid arbitration under the FAA bears the burden of establishing applicability of the Section 1 exclusion, because federal law favors arbitration.[5] According to Weeks Marine, in this case, Jimenez properly bears the burden of establishing that the Agreement *is* a contract of employment.

Whether the burden was on Weeks Marine to prove the Agreement is not a contract of employment or on Jimenez to prove that it is (and we do not decide this issue), the Agreement, as a matter of law and on its face, is not a contract of employment. In describing the purpose of the Agreement, the parties refer to employment only in the past tense: "I *was* employed by You"; "You *were* the owner and/or operator of the vessel and/or I *was* your employee." The Agreement does not address or define any terms of employment, nor does it establish or modify an employment relationship.

Jimenez insists the Agreement constitutes at least a modification of his employ-

*Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (party seeking to avoid arbitration agreement bears burden of proving that Congress intended to preclude waiver of judicial forum for the particular statutory claims at issue); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity"); and *FirstMerit Bank*, 52 S.W.3d at 756 (same).

ment contract. The amount of advances due under the Agreement is "fifty percent (50%) of the gross wages (regular and overtime) I would have otherwise earned based upon my earnings history immediately prior to my accident of April 29, 2006." Jimenez contends Weeks Marine effectually continued to pay him under his employment contract by tying the amount of advances under the Agreement to his wages. Jimenez further argues the Agreement is "employment related" because Weeks Marine stated in the cover letter transmitting the Agreement to Jimenez that advances would be "in addition to the obligatory $20 daily maintenance"; "retroactive to the date of your last work day"; and "against . . . claims for wages or other compensation due."

To determine whether the Agreement is a "contract of employment," Jimenez asks us to focus solely on the presence of employment-related words in the Agreement and in a transmittal letter—"work day," "wages," "maintenance and cure"—instead of on the purpose and meaning of the Agreement itself. Jimenez offers, and we find, no support in the law for such an approach, and we decline to adopt it. Read in its entirety, with effect given to the meaning of all provisions, we conclude the parties intended the Agreement to be an agreement to arbitrate claims in exchange for voluntary payment of a portion of the potential value of those claims. The advances contemplated by the Agreement (and actually received by Jimenez) do not constitute wages, because, as Jimenez concedes, he performed no work for Weeks Marine after his injury. The Agreement is not somehow transformed into a contract of employment merely because it provides for advances to be calculated from Jimenez's historical wages or credited against any eventual recovery for lost wages under the Jones Act. Likewise, the Agreement is not transformed into a contract of employment by virtue of Weeks Marine's choosing to assure Jimenez, in a letter, that any advances under the Agreement would be in addition to the maintenance and cure to which he was already fully entitled.[6]

As a matter of law, the Agreement is not a contract of employment and thus not excluded from the FAA.[7] We now consider

6. Further, even if the Agreement can be characterized as "employment related," as Jimenez argues, only "contracts *of* employment of seamen" are excluded from the FAA. 9 U.S.C.A. § 1 (1999) (emphasis added). *See Terrebonne v. K–Sea Transportation Corp.,* 477 F.3d 271 (5th Cir.2007). In *Terrebonne,* the Fifth Circuit was asked to hold that a post-injury arbitration agreement was a contract of employment because part of the consideration for the employee's promise to arbitrate was the employer's payment of past-due maintenance and cure. The employee argued that because the maintenance and cure obligation is inseparable from a seaman's employment contract, the post-injury arbitration agreement at issue was therefore subsumed into his employment contract and excluded from enforcement under the FAA. Conceding that the maintenance and cure obligation is an intrinsic part of the employment *relationship* between seaman and employer but noting that the agreement did not purport to change that obligation or any aspect of the worker's actual employment, the Fifth Circuit held "the agreement is not subsumed into [the employee]'s employment contract, and does not fall under section one's exception to the FAA's coverage." 477 F.3d at 280 (omitted).

7. In opposition to Weeks Marine's motion to compel arbitration and pending petition for writ of mandamus, Jimenez cites *Brown v. Nabors Offshore Corp.,* 339 F.3d 391 (5th Cir. 2003) and *Buckley v. Nabors Drilling USA, Inc.,* 190 F.Supp.2d 958 (S.D.Tex.2002). These decisions do not inform our inquiry whether the Agreement is contained or subsumed in a contract of employment. In *Brown,* the employer conceded the arbitration agreement was contained in the seaman's employment contract. The issue presented was whether the employee/seaman must prove that he was actually "involved in the trans-

whether the trial court's refusal to compel arbitration constitutes an abuse of discretion.

## B. Did the trial court abuse its discretion by refusing to compel arbitration of Jimenez's claims against Weeks Marine?

■ A party seeking to compel arbitration must first establish the existence of a valid arbitration agreement and that the claims asserted are within the scope of the agreement. *FirstMerit Bank,* 52 S.W.3d at 753; *see also In re D. Wilson Construction Co.,* 196 S.W.3d 774, 781 (Tex.2006) (orig.proceeding). If the movant proves these two elements, the burden shifts to the party opposing arbitration to present a valid defense to the agreement. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227–28 (Tex.2003). If the responding party does not present a valid defense, the trial court has no discretion and must compel arbitration and stay its own proceedings. *In re Autotainment Partners Limited Partnership,* 183 S.W.3d 532, 534–35 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding) (citing *In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 549 (Tex.2002) (orig.proceeding)).

Jimenez does not dispute that he signed the Agreement and that, if enforceable, it covers the claims he asserts in the underlying lawsuit. In opposition to Weeks Marine's motion to compel arbitration, however, Jimenez asserts a number of defenses

to enforceability. We will address each of his defenses in turn.

### 1. Is the Agreement invalid under Section 5 of the Federal Employers' Liability Act?

■ Jimenez cites two United States Supreme Court cases for the proposition that "post-injury agreements have been determined to be invalid under Section 5 of the Federal Employers' Liability Act ['FELA']." *See Boyd v. Grand Trunk Western Railroad Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949); *Duncan v. Thompson,* 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942). FELA Section 5 invalidates any contract that enables a common carrier to exempt itself from "any liability created by this [FELA] chapter." 45 U.S.C.A. § 55 (1986).

In *Duncan,* an employer paid $600 to an injured employee in exchange for the employee's agreement to try to resolve any attendant disputes without litigation and to return the money before he filed a lawsuit. The Court held that the agreement was invalid under FELA Section 5 because requiring the destitute employee to return the $600 before filing suit had the effect of exempting the employer from liability. 315 U.S. at 7, 62 S.Ct. 422.

The later case of *Boyd* involved a post-injury agreement under which the employee received cash advances against future recovery in exchange for his agreeing to

portation of goods in commerce" for the FAA § 1 exclusion to apply. *See* 9 U.S.C. § 1 (exempting from the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). The Fifth Circuit, upholding the trial court's denial of the employer's motion to compel arbitration, found that Congress intended to exclude seamen's contracts of employment from the arbitration act even where a particular seaman was not actually "engaged in … commerce." *Brown,*

339 F.3d at 394 (citing *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). *Buckley* is similarly distinguishable and unhelpful here. *Buckley,* 190 F.Supp.2d at 961–62 (concluding arbitration agreement contained in contract that employer conceded was "of employment of a seaman" was excluded from FAA coverage without employee/seaman's having to demonstrate actual involvement in interstate commerce).

bring any suit against the employer only in certain named venues in Michigan. The employee eventually filed suit in Illinois state court. The employer filed suit against the employee in Michigan, seeking to enforce the agreement and to enjoin prosecution of the Illinois action. Concluding the agreement purported to exempt the employer from (the liability of) suit in FELA-designated venues, the Court held on certiorari that Section 5 precluded enforcement of the agreement against the employee. 338 U.S. at 265–66, 70 S.Ct. 26.

Jimenez argues that the reasoning of *Boyd* and *Duncan* is applicable to preclude enforcement of the Agreement because the Jones Act extends FELA rights to seamen.[8] The trial court agreed, stating in its order denying arbitration, "Even if Weeks did establish that [the Agreement] was outside of any employment contract [and thus subject to the FAA], this Court would still deny the motion based on the reasoning set out in the cases relied on by plaintiff, [*Boyd* and *Duncan* ]." Several weeks later, Weeks Marine asked the trial court to reconsider its order on the basis of the just-issued *Terrebonne* decision, in which the Fifth Circuit held that FELA Section 5 does not invalidate a seaman's agreement to arbitrate personal injury claims. *Terrebonne v. K–Sea Transportation Corp.*, 477 F.3d 271 (5th Cir.2007). *Terrebonne* did not persuade the trial court to alter its order and to compel arbitration, but we are persuaded that it was an abuse of discretion for the trial court to deny arbitration based on *Boyd* and *Duncan*.

The Fifth Circuit read *Boyd* to hold that the venue provisions of FELA are protected under FELA Section 5 because such

venue is a "liability created by this [FELA] chapter." The court concluded that neither *Boyd* nor FELA Section 5 precluded enforcement of the agreement in *Terrebonne* because the agreement required the employee to give up nothing that had been "created by [FELA]." *Terrebonne*, 477 F.3d at 280–83 (following earlier decision in *Pure Oil Co. v. Suarez*, 346 F.2d 890 (5th Cir.1965) (holding that FELA venue provisions do not apply in Jones Act cases), *aff'd other grounds*, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966)). *See also Terrebonne* at 284 ("Under the arbitration agreement, Terrebonne does not forgo the substantive rights afforded by the Jones Act (and the general maritime law), he only submits to their resolution in an arbitral, rather than a judicial, forum.") (internal quotation marks omitted); *Great Lakes Dredge & Dock Company, LLC v. Larrisquitu*, 2007 WL 2330187 (S.D.Tex. Aug.15, 2007) (holding that *Boyd* does not preclude enforcement of forum selection clause in Jones Act case).

In addition, the court distinguished *Boyd* because it did not involve a federal statute that authorized and provided for enforcement of the agreement at issue. The agreement in *Terrebonne* was governed by the FAA and "thus the issues 'must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Terrebonne*, 477 F.3d at 283 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)) (omitted).

We conclude the Agreement requires Jimenez to give up nothing that was "created by [FELA]." FELA Section 5, therefore, does not apply to invalidate the

---

**8.** *Cox v. Roth,* 348 U.S. 207, 208, 75 S.Ct. 242, 99 L.Ed. 260 (1955) ("Congress, in passing the Jones Act, did not specifically enumerate the rights of seamen, but merely extended to them the same rights granted to railway employees by [FELA]"); 46 U.S.C.A. [Revised] § 30104(a) (Supp.2007).

Agreement even under the reasoning of *Boyd* and *Duncan* We further question the applicability of such reasoning to this case, in which the issues must be considered with a healthy regard for the federal policy favoring arbitration Accordingly, we hold the trial court misapplied FELA Section 5, *Boyd,* and *Duncan* to deny Weeks Marine's motions to compel arbitration and for reconsideration, thereby · abusing its discretion.

**2. Is the Agreement invalid because it improperly diminishes a seaman's substantive rights?**

■■■■ Jimenez contended below, and argues here, that the Agreement is not enforceable because it does not meet "the stringent standard applied to seaman's agreements that diminish the seaman's substantive rights." [9] For this proposition, Jimenez cites *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 246–47, 63 S.Ct. 246, 87 L.Ed. 239 (1942). *Garrett* involved a release of liability executed by an injured seaman in favor of his employer. The Supreme Court addressed whether, in the seaman's subsequent state court lawsuit under the Jones Act and general maritime law, the burden was on the seaman to invalidate the release (pursuant to the state's procedural rule regarding releases) or on the employer to sustain the release (pursuant to the general admiralty rule). *Id.* at 242–43, 63 S.Ct. 246. Rejecting application of the state rule, the court dis-

cussed the historic national policy in favor of safeguarding seamen's rights. In that discussion, the court stated: "[O]n every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seaman." 317 U.S. at 246–47, 63 S.Ct. 246 (citation omitted).

■■■■ Weeks Marine claims that *Garrett* is applicable only to release agreements, but the court's reasoning is not so limited and in fact appears applicable to all agreements between seamen and employers. Nonetheless, there are two factors that weigh against subjecting the Agreement in this case (or any seaman's arbitration agreement) to the scrutiny espoused in *Garrett.* First, there is a strong federal policy in favor of arbitration agreements, even in the maritime context (except in the employment contracts of seamen),[10] whereas there was no such policy favoring release agreements under consideration in *Garrett.* On that basis, the reasoning used is not fully applicable to the context at hand. Second, subjecting seamen's arbitration agreements to *Garrett* scrutiny runs afoul of the rule that FAA-governed arbitration agreements may be invalidated only on grounds that apply to any contract.[11]

Finally, even if we accept Jimenez's contention that Weeks Marine must prove, under *Garrett,* that the Agreement is fair

---

9. *But see Terrebonne,* 477 F.3d at 284 (holding that by agreeing to submit Jones Act claim to arbitral rather than judicial forum, seaman does *not* forgo substantive rights); *Larrisquitu,* 2007 WL 2330187, at *20 ("*Terrebonne* demonstrates that the protected status of domestic seamen does not exempt seamen from being bound by contracts that limit the tribunals for resolving claims, including claims under the Jones Act.").

10. *Terrebonne,* 477 F.3d at 285.

11. 9 U.S.C.A. § 2 (1999) (providing that written arbitration provision in maritime or other transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract"). *See also Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("Courts may not … invalidate arbitration agreements under state laws applicable only to arbitration provisions.").

to Jimenez, the details of the exchange are in the record. Jimenez is incorrect in his conclusion that the exchange was "grossly unbalanced." Jimenez claims that "[a]n advance on money owed is by no means adequate consideration in exchange for giving up [the right to a jury trial and appellate review], much less the 'extraordinary benefits' owed for those sacrifices under *Garrett*." However, until the claims are adjudicated in Jimenez's favor, the money is not "owed." Considering the strong federal policy favoring arbitration, the Agreement would not fall shy of the "stringent standard" espoused in *Garrett*, were such standard applicable.

■ The order denying arbitration cannot be sustained on the basis that the Agreement fails to withstand *Garrett* scrutiny, because (1) *Garrett* does not apply and (2) if *Garrett* did apply, the record does not support a conclusion that Jimenez received inadequate consideration for entering into the Agreement.

**3. Is the Agreement substantively unconscionable under Texas law and thus unenforceable against Jimenez?**

■ Jimenez argues that denial of Weeks Marine's motion to compel arbitration was proper under the FAA because the Agreement is unconscionable under Texas law. There are two types of unconscionability: procedural (fairness of the circumstances surrounding adoption of the arbitration provision) and substantive (fairness of the arbitration provision itself). *See, e.g., In re Luna*, 175 S.W.3d 315, 319 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding). Both procedural and substantive unconscionability may be considered by a court in determining whether an arbitration clause is valid and enforceable. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex.2002) (orig.proceeding) ("courts may consider both procedural and substantive unconscionability of an arbitration clause

in evaluating the validity of an arbitration provision").

■ The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001) (orig.proceeding) (quoted in *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig.proceeding)). To show substantive unconscionability in the trial court, Jimenez presented his and his wife's affidavits stating, respectively, "I do not have the financial ability to pay for an arbitration," and "We do not have the financial ability to pay for an arbitration." Jimenez presented no evidence below of the potential cost of an arbitration under the terms of the Agreement. In this court, Jimenez cites a report on the internet as evidence that the average cost of an AAA arbitration in 2002 can be as much as $6,650 for a small consumer claim. Jimenez contends in his briefing, "For a larger personal injury claim, such as this one, the costs could be significantly higher."

■ Assuming, without deciding, that this evidence is competent to show the likely cost of arbitration for this dispute, Jimenez must still show the likelihood of incurring such costs. *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs"); *see also FirstMerit*, 52 S.W.3d at 756–57. Under the Agreement, Weeks Marine is required to pay the filing

fee and any deposit for compensation of the arbitrator(s), with subsequent allocation of fees between the parties. An agreement that is silent as to cost is not *per se* unconscionable, *FirstMerit,* 52 S.W.3d at 756–57, and an agreement that provides for fee-splitting is not, by itself, unconscionable. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 822 (Tex. App.-San Antonio 1996, no pet.). It follows that an agreement providing for "subsequent allocation" of cost is not necessarily unconscionable. Moreover, Weeks Marine averred in the trial court, and avers here, that it will bear the entire cost of the arbitration.

For the reasons stated above, we hold the order denying arbitration cannot be sustained on the basis that the Agreement is substantively unconscionable.

**4. Is the Agreement procedurally unconscionable under Texas law and thus unenforceable against Jimenez?**

■■■ One of Jimenez's defensive contentions is that the Agreement is procedurally unconscionable because "it was procured under improper circumstances and by strong-arm means." Specifically, Jimenez asserts that (1) he did not understand the Agreement, (2) he would not have signed if he had been told that he was giving up his right to a jury trial, (3) Weeks Marine's representative told him he would receive no benefits unless he signed the document (which he says she described as "paperwork"), and (4) Weeks Marine pushed the Agreement on Jimenez when he was still recuperating and under stress from his injury. Weeks Marine disputes

these assertions but further argues that a claim of procedural unconscionability will not preclude arbitration, because procedural unconscionability is properly a question for the arbitrator, not the court. In this regard, Weeks Marine relies on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

In *Prima Paint,* a party resisted arbitration on the basis that it had been fraudulently induced to sign the contract containing the arbitration provision. Settling a conflict among the circuit courts of appeal, the United States Supreme Court held that in addressing a motion to compel arbitration and any opposition thereto, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404, 87 S.Ct. 1801.[12] In the more recent case, *Buckeye Check Cashing,* the Court declared that this rule also applies to FAA cases pending in state courts, as a matter of substantive federal arbitration law. 546 U.S. at 449, 126 S.Ct. 1204. *See also FirstMerit,* 52 S.W.3d at 756 ("defenses must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration").

The parties take opposing positions on whether Jimenez's procedural unconscionability claim relates to the "contract as a whole" or to the "arbitration provision." Weeks Marine suggests that the Agreement is a "larger" contract, calling for the payment of advances to Jimenez, into

---

**12.** The Court's holding was based on Section 4 of the FAA, which states, in pertinent part: "[On request to compel arbitration, t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to pro-

ceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C.A. § 4 (1999); *see Prima Paint,* 388 U.S. at n. 11.

which was inserted an arbitration clause. This characterization is belied first by the title of the Agreement, which is "Claim Arbitration Agreement." Plus, Weeks Marine ignores that its offer to pay advances on Jimenez's claims constitutes the consideration for Jimenez's agreeing to arbitrate those claims, which is the primary, if not exclusive, reason for the Agreement. *Cf. In re H.E. Butt Grocery Company*, 17 S.W.3d 360, 368 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (determining that where sole purpose of document was to give employee the option of electing comprehensive benefits and arbitration over basic benefits and the right to sue, defense to arbitration was properly construed as attack on arbitration provision). We conclude that Jimenez's procedural unconscionability attack is directed at the agreement to arbitrate.[13] Under *Prima Paint* and its progeny, such an attack presents a question for disposition by the trial court, rather than the arbitrator.

Our holding that the procedural unconscionability issue in this case is for the trial court to decide does not rest exclusively on our conclusion that the issue is directed at the agreement to arbitrate rather than at the "larger" agreement. In the cases establishing and following the "rule" that defenses aimed at the contract as a whole are to be determined by the arbitrator, not the court, the contract at issue contained a broad arbitration provision. In *Prima Paint*, for example, the provision at issue called for arbitration of "[a]ny controversy or claim *arising out of or relating to this Agreement*, or the breach thereof." 388 U.S. at 398, 87 S.Ct. 1801 (emphasis added).[14] Indeed, in establishing its seminal holding, the Court in *Prima Paint* stated, "In the present case no claim has been advanced by Prima Paint that F & C fraudulently induced it to enter into the agreement to arbitrate '(a)ny controversy or claim arising out of or relating to this Agreement, or the breach thereof.' *This contractual language is easily broad enough to encompass Prima Paint's claim that [the agreement] itself [was] procured by fraud.*" 388 U.S. at 406, 87 S.Ct. 1801 (emphasis added). The scope of the arbitration provision encompassed the defenses raised to the agreement as a whole, so those defenses were held subject to arbitration. *See also Buckeye Check Cashing*, 546 U.S. at 446, 126 S.Ct. 1204 ("because respondents challenge the Agreement, but not specifically its arbitration provisions,

---

**13.** Weeks Marine cites *In re Halliburton Co.*, 80 S.W.3d 566 (Tex.2002) (orig.proceeding) for the proposition that only an agreement providing for "one-sided arbitration" can constitute a "stand-alone arbitration agreement." We find nothing in the *In re Halliburton* decision to support (or decipher) the stated proposition or to inform this court's consideration of whether Jimenez's procedural unconscionability attack pertains to the agreement to arbitrate or the agreement "as a whole." Above all, we resist the temptation to apply a particular label to our conclusion.

**14.** *See also, e.g., Buckeye Check Cashing*, 546 U.S. at 442, 126 S.Ct. 1204 (addressing contract requiring arbitration of "[a]ny claim, dispute, or controversy ... arising from or relating to this Agreement ... or the validity, enforceability, or scope of this Arbitration

Provision or the entire Agreement"); *FirstMerit*, 52 S.W.3d at 752 (addressing contract providing for arbitration of "all disputes, claims, or other matters in question arising out of or relating to this Loan, its interpretation, validity, performance or the breach thereof"); *American Medical Technologies, Inc. v. Miller*, 149 S.W.3d 265, 268 (Tex.App.-Houston [14th Dist.] 2004, orig. proceeding) ("any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration"); *Dewey v. Wegner*, 138 S.W.3d 591, 594 (Tex.App.-Houston [14th Dist.] 2004, no pet.) ("[a]ny controversy or claim arising out of or relating to this [agreement] ... or any claim or dispute between the parties to this [agreement] ... shall be settled by arbitration").

*those provisions* are enforceable") (emphasis added).

In this case, the arbitration clause provides:

[Weeks Marine is] prepared to make voluntary advances against settlement of any claim that could arise out of the personal injury/illness claim I have made including, but not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant; tort claims; Jones Act claims, general maritime claims, claims for discrimination or harassment on bases which include but are not limited to race, sex, sexual orientation, religion, national original, age, marital status, disability or mental condition; claims for benefits and claims for violation of any federal, states [sic] or other governmental statute, ordinance, regulations or public policy, under the doctrine of unseaworthiness, Jones Act, or any other applicable law, provided [that Jimenez] agree[s] to arbitrate any such claim....

Jimenez did not, by this provision, agree to arbitrate any claims that may arise as a result of entering into the Agreement; he agreed only to arbitrate claims arising out of the injury he suffered during his employment with Weeks Marine. Jimenez's defensive claim—that he was induced to sign the Agreement by unconscionable means on the part of Weeks Marine—thus does not fall within the scope of the arbitration agreement between the parties. Consequently, under *Prima Paint* and its progeny, even if the procedural unconscionability claim were directed at the contract as a whole (as Weeks Marine argues), the issue is *not* one for the arbitrator because the arbitration provision does not cover that issue. *Cf. Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (because arbitration is a matter of contract, party cannot be required to submit to arbitration any dispute which he has not agreed so to submit); 9 U.S.C.A. § 4 (1999) (where "the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement* ") (emphasis added).

■ Finally, Jimenez suggests that in denying arbitration and reconsideration, the trial court implicitly found that Weeks Marine used improper means to procure the Agreement, which was thus procedurally unconscionable. Any such finding would necessarily have been based on the court's accepting the Jimenezes' affidavit testimony and disregarding the affidavit testimony of Teresa Olivo, Weeks Marine's representative.[15] When faced with conflicting affidavits, however, a trial court may not adjudicate defenses to enforceability of an arbitration agreement without an evidentiary hearing. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992) (orig.proceeding) ("if the material facts necessary to determine [a motion to compel arbitration] are controverted, by an opposing affidavit or otherwise admissi-

---

**15.** Jimenez testified that "[Ms. Olivo] very clearly told me that Weeks would not pay for anything unless I signed the paperwork and 'got all the paperwork in.' ... I was very worried and concerned that I would lose not only my income but my medical benefits. That is the only reason I signed the paperwork Ms. Olivo sent me. I did not understand that I would be giving up a right to a jury trial, and I would not have signed the paperwork if I had been told this." Olivo testified, "At no time did anyone represent that [Jimenez's] maintenance and cure was contingent upon his agreement to arbitrate. On the contrary, Mr. Jimenez understood that by agreeing to arbitrate, he would receive additional payments as an advance against a possible award. His only concern was how soon it would be before he received the additional payments."

ble evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts").[16] The parties confirmed at oral argument that the trial court did not conduct an evidentiary hearing on Weeks Marine's motion to compel arbitration or its motion for reconsideration.

The order denying arbitration cannot be sustained on the basis that the Agreement is procedurally unconscionable, although that issue is properly to be resolved by the court. If, as Jimenez contends, the trial court implicitly found that the Agreement is procedurally unconscionable, it was an abuse of discretion for such finding to be made without an evidentiary hearing.

## CONCLUSION

The order denying arbitration cannot be sustained on any ground considered by the trial court. Accordingly, we conditionally grant Weeks Marine's petition insofar as it requests us to instruct the trial court to vacate the order. We are confident the trial court will vacate its October 31, 2006 order denying Weeks Marine's motion to compel arbitration and its May 3, 2007 order denying Weeks Marine's motion for reconsideration. The writ of mandamus will issue only if the trial court fails to comply.

The procedural unconscionability issue is not, as Weeks Marine contends, for the arbitrator to decide. The issue is for the trial court to decide,[17] but the trial court has either not made a decision or made a decision on disputed affidavit testi-

mony without the requisite evidentiary hearing. In either event, we are unable to direct entry of an order compelling arbitration while disputed issues of fact remain unresolved. Accordingly, we deny the petition insofar as Weeks Marine requests us to instruct the trial court to compel arbitration.

must be held on material issue of fact regarding whether enforceable agreement to arbitrate exists). [CHECK FONT SIZE]

**16.** *See also In re Washington Mutual Finance, L.P.*, 173 S.W.3d 189, 192-93 (Tex.App.-Corpus Christi 2005, orig. proceeding) (issuing writ of mandamus where trial court sustained plaintiff's defense to arbitration without providing both sides a fair opportunity to present evidence); *In re Jebbia*, 26 S.W.3d 753, 757 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (holding that evidentiary hearing

**17.** This court is forbidden, of course, to decide disputed areas of fact. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990).