**Petition for Writ of Mandamus Denied and Memorandum Opinion filed July 31, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00448-CV

---

## IN RE FINN KRISTENSEN, AKZO NOBEL POLYMER CHEMICALS, LLC, AKZO NOBEL, INC., AKZO NOBEL CHEMICALS, LLC, RYDER TRUCK RENTAL, INC., AND GABE T. VICK, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-58165**

---

## MEMORANDUM OPINION

On June 11, 2014, relators Finn Kristensen, Akzo Nobel Polymer Chemicals, LLC, Akzo Nobel, Inc., Akzo Nobel Chemicals, LLC, Ryder Truck

Rental, Inc., and Gabe T. Vick, filed a petition for writ of mandamus with this court. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. In their petition, relators ask this court to compel the Honorable Mike Engelhart, presiding judge of the 151st District Court of Harris County, to vacate portions of three orders requiring relators to produce certain information in discovery and sanctioning one of the defense attorneys. On June 12, 2014, we temporarily stayed enforcement of the challenged orders pending our disposition of relators' petition. We now deny the petition and lift our stay.

## I. BACKGROUND

This original proceeding arises out of a series of discovery disputes in a motor vehicle-related personal injury lawsuit. In September 2013, real party in interest Dononato Castillo, Jr. filed suit against relators Finn Kristensen, Akzo Nobel Polymer Chemicals, LLC, Akzo Nobel, Inc., Akzo Nobel Chemicals, LLC, and Ryder Truck Rental, Inc. for injuries allegedly sustained in a December 2012 collision between two trucks. As claimed by Castillo, Kristensen was the driver of a truck owned by Ryder and leased to the Akzo companies. Kristensen allegedly rear-ended the truck driven by Castillo, causing Kristensen's truck to jackknife and resulting in a secondary impact to Castillo's truck. The contentious discovery between the parties in the ensuing litigation resulted in the following actions by the trial court that relators challenge.

***Purported Requirement to Produce Privileged Attorney-Client and Work Product Information***

Castillo's original petition included numerous initial discovery requests. Among these requests was request for production no. 81 ("Request 81"), which reads:

> Any and all correspondence, including emails, between you and your representatives, agents, insurance adjusters, attorneys and Ryder Truck Rental, Inc., their employees, agents, representatives, attorneys, and/or insurance adjusters regarding or pertaining in any way to the Subject Collision, the parties and/or the indemnity arrangement between the parties.

Relators objected to this request on multiple grounds, and further asserted the attorney-client and attorney work product privileges "to the extent this request seeks such privileged documents or information."

Castillo filed a motion to compel with respect to several discovery requests, followed shortly thereafter by an amended motion to compel, both of which specifically referenced Request 81 as being one of the requests in dispute. Relators reiterated their assertion of privilege with respect to Request 81 in response to Castillo's amended motion. In an order dated May 7, 2014, the trial court granted Castillo's amended motion, ordering relators to "provide full and complete responses and answers" to various discovery requests, including Request 81.

Relators sought reconsideration of the trial court's order, again arguing that Request 81 sought production of privileged information. In an order dated June 2, 2014, the trial court denied in part relators' motion to reconsider. The trial court added a handwritten notation to the bottom of the typewritten order that reads: "Defendant Ryder Truck Rental, Inc. does not have to respond to Request 81 at this time. The motion is otherwise DENIED in all respects and any assertions of

privileged documents must be established by evidence, and via a privilege log if requested."

***Requirement to Provide a Medical Records Release Authorization***

In his initial set of discovery requests to Kristensen, Castillo requested information via two interrogatories regarding any alcohol or medication taken by Kristensen in proximity to the accident, as well as any medications prescribed to him in the year preceding the accident and related information. Kristensen responded by stating objections, but also noting that he had been prescribed medication for diabetes and cholesterol and had taken that medication on the day of the accident. The parties disputed the sufficiency of Kristensen's responses to these interrogatories, and in the May 7, 2014 order referenced above, relators were ordered to "provide full and complete responses and answers" to both interrogatories.

In addition to these two interrogatories, Castillo subsequently served a separate request for production on Kristensen, seeking a medical records release authorization for a five-year period in order to obtain Kristensen's medical records pertaining to alcohol abuse, diabetes, and hypertension. Kristensen responded by stating the request for production was outside the scope of discovery. In late May 2014, after the trial court issued its May 7 order, Castillo moved to compel production of the medical records release authorization. Following briefing on the motion to compel, the trial court issued an order dated June 4, 2014 granting Castillo's motion, and ordering Kristensen to provide a signed medical records release authorization.

***Sanctioning of Attorney and Warning of Possible Future Sanctions***

As part of the motion in which he sought the medical records release authorization from Kristensen, Castillo also moved for sanctions, citing in support

three purported discovery abuses by relators. First, Castillo noted that relators produced heavily-redacted cell phone records for Kristensen in lieu of providing a signed authorization to retrieve Kristensen's cell phone records for the time of the accident as the court had ordered. Second, Castillo noted an allegedly false statement made to the trial court and later recanted concerning documentation of an injury Castillo had suffered years previously. Third, Castillo noted relators had expanded a response to an interrogatory after representing to the trial court that an earlier, narrower response was accurate. Relators disputed Castillo's characterization of events, and argued that no sanctions were warranted.

In its June 4, 2014 order, the trial court sanctioned one of the defense attorneys in the amount of $1,500 "for his failure to comply with previous orders of this Court." The court's order continues, "[A]dditional motions by Defendants to reconsider this Court's discovery rulings may be met with significantly higher sanctions amounts, potentially on the Court's own motion."

\* \* \*

In their petition for writ of mandamus, relators seek to vacate portions of the trial court's May 7, 2014, June 2, 2014, and June 4, 2014 orders. Specifically, relators assert that the trial court abused its discretion by: (1) ordering the production of privileged attorney-client and attorney work product information; (2) ordering the production of a medical records release authorization for Kristensen; (3) threatening further sanctions; and (4) imposing sanctions on the attorney.

## II. THE MANDAMUS STANDARD

Generally, mandamus relief is appropriate only when the trial court clearly abused its discretion and the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). As the party seeking relief, the relator bears the burden of demonstrating entitlement to mandamus relief. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding).

In a mandamus proceeding, a trial court's determination of factual issues is entitled to deference. Thus, a trial court will be held to have abused its discretion only if the relator establishes that the trial court reasonably could have reached but one decision, and it was not the decision the trial court made. *Walker*, 827 S.W.2d at 839–40; *In re Weeks Marine*, 242 S.W.3d 849, 853 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]).

By contrast, "[a] trial court has no discretion in determining what the law is or in applying the law to the facts." *Walker*, 827 S.W.2d at 840 (internal quotations omitted). Therefore, a trial court abuses its discretion if it: (1) reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law; (2) clearly fails to correctly analyze or apply the law; or (3) acts without reference to any guiding rules or principles. *In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d 447, 449–50 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).

"[D]etermining whether a party has an adequate remedy by appeal requires a 'careful balance of jurisprudential considerations' that 'implicate both public and private interests.'" *Ford*, 165 S.W.3d at 317 (quoting *In re Prudential Ins. Co. of*

7

*Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)). As a general matter, an appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *Prudential*, 148 S.W.3d at 136.

### III. ANALYSIS

### Issue 1: Possible Production of Privileged Attorney-Client and Work Product Information

In their first issue, relators argue the trial court has ordered them to produce privileged attorney-client and work product information in response to Request 81. Relators contend that the trial court's handwritten notations in the June 2 order create an ambiguity about what they must produce. Relators state that the trial court may not have "intend[ed] to compel the production of privileged documents." Relators nevertheless "interpret" the trial court's orders "to require Relators to produce all communications between Relators and their lawyers" in response to Request 81. Viewing the trial court's orders as a whole, we conclude that Request 81 does not require production of all communications between relators and their lawyers.

"The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments." *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding); *accord Harper v. Welchem, Inc.*, 799 S.W.2d 492, 494–95 (Tex. App.—Houston [14th Dist.] 1990, no writ). As with other written instruments, a court order is ambiguous if, applying standard rules of construction, it is susceptible to more than one reasonable interpretation. *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam).

8

In its May 7 order, the trial court granted Castillo's motion to compel and ordered relators to provide "full and complete responses and answers" to Request 81. In its June 2 order, the trial court denied in part relators' motion to reconsider, which was based explicitly on their assertion that compliance with the May 7 order would require the production of privileged information. In so doing, the trial court wrote in the June 2 order that "any assertions of privileged documents must be established by evidence, and via a privilege log if requested." We do not read this language in the June 2 order as an unequivocal determination to overrule the assertions of attorney-client and work product privileges. Instead, we read it as a direction to relators to substantiate their assertions of the attorney-client and work product privileges before they can avail themselves of those protections to withhold documents in discovery.

This reading of the June 2 order comports with governing standards. "When an ambiguous order is susceptible to two reasonable constructions, an appellate court should adopt the construction that correctly applies the law." *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam). Texas law provides privileges for attorney-client communications and attorney work product, as specified in Texas Rule of Evidence 503 and Texas Rule of Civil Procedure 192.5. However, "[t]here is no presumption that documents are privileged." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 225 (Tex. 2004) (per curiam) (orig. proceeding). Therefore, "[t]he party who seeks to limit discovery by asserting a privilege has the burden of proof." *Id.* at 223. "To meet its burden, the party seeking to assert a privilege must make a prima facie showing of the applicability of the privilege and produce evidence to support the privilege." *In re USA Waste Mgmt. Res., L.L.C.*,

9

387 S.W.3d 92, 96 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding [mand. denied]). "The prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *DuPont*, 136 S.W.3d at 223 (internal quotations omitted). This standard can be satisfied by filing an affidavit in support of the assertion of privilege. *Id.*; *USA Waste*, 387 S.W.3d at 96. A prima facie showing also can be made by testimony, or, if deemed necessary, production of the documents to the court for *in camera* inspection. *In re ExxonMobil Corp.*, 97 S.W.3d 353, 357 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

When the trial court's June 2 order states that "any assertions of privileged documents must be established by evidence," that order correctly applies the law regarding the invocation of a privilege. The same is true regarding the trial court's statement that relators' privilege assertions may need to be made "via a privilege log if requested." *See* Tex. R. Civ. P. 193.3(b). Therefore, we do not interpret the trial court's orders to require the production of privileged information before relators have had the opportunity to proffer evidence and a privilege log in an effort to establish the privileges being asserted. Even if relators may be required pursuant to the court's May 7 and June 2 orders to produce some information in response to Request 81, that fact does not, by itself, mean that privileged information must be disclosed before the evidentiary basis for any claimed privilege has been developed by the parties and considered by the trial court.

We therefore overrule relators' first issue.

**Issue 2: Requirement for Kristensen to Provide a Medical Records Release Authorization**

In their second issue, relators rely primarily on the physician-patient privilege under Texas Rule of Evidence 509 in asserting that the trial court's order for Kristensen to provide a medical records release authorization constitutes an unwarranted invasion of Kristensen's privacy. Relators further argue that Kristensen has made no claim for personal injury and has produced documentation demonstrating he is medically certified to drive a tractor-trailer. Therefore, according to relators, his medical records are not relevant or reasonably calculated to lead to the discovery of admissible evidence.

As noted above, "the party seeking to assert a privilege must make a prima facie showing of the applicability of the privilege and produce evidence to support the privilege." *USA Waste*, 387 S.W.3d at 96. This requirement is not limited to the attorney-client and work product privileges. *See In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 261 (Tex. 2005) (orig. proceeding) ("[A] prima facie case for the privilege must be established by testimony or affidavit."); *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding) (party resisting discovery under Texas Rule of Evidence 507 bears initial burden to "establish that the information is a trade secret"); *In re Intracare Hosp.*, No. 14-07-00127-CV, 2007 WL 2682268, *3 (Tex. App.—Houston [14th Dist.] Sept. 13, 2007, orig. proceeding) (mem. op., per curiam) (affidavit established prima facie showing of applicability of the medical committee privilege); *see also* Tex. R. Civ. P. 193.4(a) (at a hearing on an assertion of privilege "[t]he party making the objection or

11

asserting the privilege must present any evidence necessary to support the objection or privilege").

The record does not indicate that relators have provided any evidence to make the required prima facie showing. Relators refer in their mandamus petition to their assertion of privilege under Rule 509 in their response to one of Castillo's motions to compel. But relators merely claimed the privilege in that response.

"[T]he physician-patient . . . privilege[] [is] not absolute." *R.K. v. Ramirez*, 887 S.W.2d 836, 840 (Tex. 1994) (orig. proceeding). Various exceptions limit the privilege's scope. *See* Tex. R. Evid. 509(e) (listing seven exceptions in civil proceedings). Potentially applicable in the underlying proceedings is the patient-litigant exception, which excludes from the scope of the privilege "a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." Tex. R. Evid. 509(e)(4); *see also R.K.*, 887 S.W.2d at 842–43 (discussing application of the patient-litigant exception); *In re Jarvis*, 431 S.W.3d 129, 135 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding) (same). Because the record does not indicate that relators made a prima facie showing that the physician-patient privilege applies to Kristensen's medical records, relators have not demonstrated entitlement to

mandamus relief from the trial court's order that Kristensen provide a medical records release authorization.[1]

Relators also argue in their petition that Kristensen's medical records are not relevant or reasonably calculated to lead to the discovery of admissible evidence. Specifically, relators argue that Kristensen's medical history is "collateral to the claims and defenses in this lawsuit," and that Kristensen's medical condition "is not relied upon as part of any claim or defense." It is unclear whether this argument is intended to be distinct from relators' claim of privilege under Rule of Evidence 509 because these arguments appear to be relevant to the privilege analysis. *See Jarvis*, 431 S.W.3d at 135 (summarizing patient-litigant exception to physician-patient privilege as applying where: "(1) the records are relevant to the condition at issue in the litigation, and (2) the condition contained in the records is relied upon as 'part' of a party's claim or defense"). To the extent relators do intend for this argument to be distinct, the argument falls short of demonstrating their entitlement to mandamus relief.

"The scope of discovery is largely within the trial court's discretion." *In re HEB Grocery Co.*, 375 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding). "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending

---

[1] Relators' reference in their petition to the federal Health Insurance Portability and Accountability Act ("HIPAA") does not aid their argument. As this court has noted: "The HIPAA provisions do not create a privilege against production or admission of evidence; they merely create a procedure for obtaining protected medical records in litigation. . . . Thus, HIPAA does not alter our privilege analysis." *Jarvis*, 431 S.W.3d at 135 (internal citations omitted). Also, relators' reference to Section 181.006 of the Texas Health and Safety Code is equally unavailing because that provision merely creates an exception to disclosure of information under the Texas Public Information Act.

action . . . ." Tex. R. Civ. P. 192.3(a). The phrase 'relevant to the subject matter' is to be 'liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial.'" *HEB*, 375 S.W.3d at 500 (quoting *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009)).

Relators argue that discovery of Kristensen's medical history falls outside the scope of Rule 192.3 because Kristensen's medical certifications already have been provided to Castillo. But the fact that Kristensen may have been medically certified to drive does not necessarily mean that there is no other information in Kristensen's medical history that may bear on the litigation. Castillo alleges that Kristensen was not qualified to operate a tractor-trailer under applicable federal regulations as part of Castillo's claim of negligence against the defendants. Negligence has long been defined as doing something that a person of ordinary prudence under the same or similar circumstances would not have done, or, conversely, failing to do something that a person of ordinary prudence under the same or similar circumstances would have done. *20801, Inc. v. Parker*, 249 S.W.3d 392, 398 (Tex. 2008). If, as Castillo suggests, Kristensen had a disqualifying condition that was not disclosed in connection with his medical certification, that could be germane to whether any of the defendants acted with negligence. Therefore, relators have not demonstrated that discovery of Kristensen's medical records is outside the scope of permissible discovery. *Cf. R.K.*, 887 S.W.2d at 843–844 (concluding in context of privilege claim under Tex. R. Evid. 509 that doctor's medical and mental condition was relevant in a medical malpractice claim).

"The heavy burden of establishing an abuse of discretion and an inadequate appellate remedy is on the party resisting discovery." *HEB*, 375 S.W.3d at 500.

Relators have not satisfied that burden. Accordingly, we overrule relators' second issue.

**Issue 3: Threat of Future Sanctions**

In their third issue, relators challenge the statement in the trial court's June 4 order, which reads: "[A]dditional motions by Defendants to reconsider this Court's discovery rulings may be met with significantly higher sanctions amounts, potentially on the Court's own motion." Relators characterize this as a "preemptive" sanction, and argue that it results in a chilling effect preventing them from vigorously and zealously presenting their defense. We conclude that mandamus relief is not warranted at this juncture because any challenge to this portion of the June 4 order is premature.[2]

The trial court's June 4 order does not categorically preclude relators from filing additional motions, nor did the court state that any additional motions necessarily will result in further sanctions. We conclude that a challenge to this portion of the trial court's June 4 order is not ripe. "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998). "Ripeness . . . is a threshold issue that implicates subject matter jurisdiction . . . ." *Id.* at 442. "The essence of the ripeness doctrine is to avoid premature adjudication . . . ; to hold otherwise would be the

---

[2] The only sanction imposed by the trial court was the $1,500 monetary sanction against one of the defense attorneys, which relators challenge separately in their fourth issue. We address that sanction below.

essence of an advisory opinion, advising what the law would be on a hypothetical set of facts . . . ." *Id.* at 444.

Relators have not yet been sanctioned by the trial court for any future conduct. If relators are sanctioned further by the trial court, they retain the ability to seek relief via a petition for writ of mandamus or appeal. Indeed, this court has no way to predetermine whether any future sanctions imposed by the trial court would be legally supportable because that analysis will depend on the facts surrounding any future sanctions order. The mere fact that relators may be sanctioned in the future does not provide a basis for mandamus relief. *See In re Kuster*, 363 S.W.3d 287, 290–91 (Tex. App.—Amarillo 2012, orig. proceeding) ("[T]o the extent that [relator's] petition seeks mandamus relief based upon events that have not yet occurred and remain merely hypothetical, we conclude that we are without jurisdiction to render advisory opinions on factual situations that may or may not arise in the future. . . . We decline to direct the trial court to declare void an order the effectiveness or viability of which we do not know.") (internal citations omitted).

Relators' reliance on *In re Ford Motor Company*, 988 S.W.2d 714 (Tex. 1998) (orig. proceeding), does not change the analysis. In *Ford*, the trial court issued a sanctions order requiring the sanctioned party to pay a set amount of attorney's fees if that party chose to appeal the decision or pursue relief by a petition for writ of mandamus. 988 S.W.2d at 720. In assessing whether the party had an adequate remedy by appeal to warrant mandamus relief, the Texas Supreme Court concluded that a monetary penalty on a party's prospective exercise of its legal rights could not be adequately remedied by appeal because possible removal

of the monetary penalty on appeal would not free the party of the chilling effect of the penalty that would result in the interim. *Id.* at 722–23. Unlike the party in *Ford*, however, relators have not been penalized for any prospective exercise of their legal rights. Rather, any additional sanctioning of relators based on their filing a future motion remains only a possibility.

In sum, it is premature for relators to challenge a possible future imposition of sanctions by the trial court. This record does not provide a basis for concluding that relators' ability to continue the litigation is threatened. *See Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (orig. proceeding). If the trial court imposes additional sanctions on relators that they believe constitute an abuse of the trial court's discretion, relators retain the ability to seek appropriate relief from such an order at that time. Therefore, we overrule relators' third issue.

**Issue 4: Sanctioning of Attorney**

In their fourth issue, relators challenge the trial court's imposition of a $1,500 sanction against one of the defense attorneys. "[M]andamus will not issue when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding). A discovery sanction such as that imposed by the trial court "shall be subject to review on appeal from the final judgment." Tex. R. Civ. P. 215.3; *see also In re Smith*, 192 S.W.3d 564, 569 (Tex. 2006) (per curiam) (orig. proceeding) ("A sanctions order is appealable when the judgment is signed.").

Because an appellate avenue exists, "[o]rdinarily, a relator has an adequate remedy by appeal from an order awarding monetary sanctions." *In re RH White Oak, LLC*, --- S.W.3d ---, No. 14-13-00979-CV, 2014 WL 495105, *8 (Tex.

App.—Houston [14th Dist.] Feb. 6, 2014, orig. proceeding [mand. denied]) (per curiam). However, in circumstances where "a monetary sanction is so severe as to threaten a party's continuation of litigation, an appeal is an adequate remedy only if payment is deferred until final judgment when the party can supersede the judgment and perfect an appeal." *Id.*; *see also Braden*, 811 S.W.2d at 929. But for this exception to the general rule to apply, a relator must advise the trial court that the monetary sanction would preclude continuation of the litigation. *See In re Le*, 335 S.W.3d 808, 814–15 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). Nothing in the record before us establishes that the $1,500 sanction will preclude continuation of the litigation.

Therefore, there is no basis to conclude that relators lack an adequate remedy by appeal, and, consequently, relators are not entitled to mandamus relief. Accordingly, we overrule relators' fourth issue.

## IV. CONCLUSION

Relators have not satisfied their burden to demonstrate entitlement to mandamus relief on any of the issues presented. Accordingly, we deny relators' petition for writ of mandamus. We also lift our stay granted on June 12, 2014.

PER CURIAM

Panel consists of Justices Boyce, Busby, and Wise.