**Petition for Writ of Mandamus Conditionally Granted in Part and Denied in Part and Opinion filed August 30, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00224-CV

---

## IN RE JOAN E. JARVIS, Relator

---

ORIGINAL PROCEEDING
WRIT OF MANDAMUS
10th District Court
Galveston County, Texas
Trial Court Cause No. 12CV1457

---

## OPINION

On March 15, 2013, relator Joan E. Jarvis filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. §22.221; *see also* Tex. R. App. P. 52. In her petition, relator asks this Court to compel the Honorable Kerry L. Neves, presiding judge of the 10th District Court of Galveston County, to vacate

his order signed January 30, 2013, ordering discovery of certain medical records and insurance contracts. We conditionally grant mandamus relief in part because we conclude that medical billing records for procedures unrelated to the injury at issue in this suit are protected by the physician-patient privilege. We deny the remainder of the requested relief.

## BACKGROUND

Relator Joan Jarvis alleges a dog owned by real party in interest Michael Parkan bit her right hand. In July 2012, Jarvis sued Parkan for damages in relation to her hand injury. Jarvis initially had surgery on her hand at Clear Lake Regional Hospital. Seven months later she had another surgery performed by Dr. Charles Polsen of South Shore Plastic Surgery at a surgery center owned by Dr. Polsen. Jarvis's medical insurer is Anthem Blue Cross Blue Shield (BCBS).

In his answer to Jarvis's suit, Parkan alleged: "The amount [Jarvis] was allegedly billed for the medical treatment claimed to have been received by [Jarvis] for the post-accident medical treatment is in excess of the amounts actually paid or incurred."

In September 2012, Parkan noticed the depositions by written questions of South Shore/Dr. Polsen, Clear Lake Regional Medical Center, and Bay Area Hand Institute/Dr. Alfred Mitchell. In the subpoena duces tecum directed toward the custodian of records for these entities, Parkan requested "the entire billing record file dated 04/09/2011 to present" pertaining to Jarvis. From South Shore and Dr. Polsen specifically, Parkan also sought "the entire medical records file" pertaining to Jarvis.

2

Jarvis filed a motion to quash and requested a protective order restricting access to and dissemination of the medical and billing records. Jarvis alleged that the requests were "not reasonably limited in time or scope to the events or issues related to this litigation." She further alleged the requests sought privileged information. It does not appear from the record that the trial court ruled on this initial motion to quash or the discovery to which it was directed.

In November 2012, Parkan noticed the deposition by written questions of BCBS, requesting: "[a]ll managed care contracts, other contracts regarding patient billing, payments, adjustments, write-offs, correspondence and notes relating to services provided to Joan Jarvis" by Dr. Polsen; "[a]ll managed care contracts [by South Shore or S.T.A.E.C. (an ambulatory surgical center)] to accept BCBS payments as full payment for services provided Joan Jarvis"; and "[a]ll payments made" to any of these entities "for services rendered to Joan Jarvis." In January 2013, Parkan noticed new depositions by written questions of South Shore, Dr. Polsen, and S.T.A.E.C., requesting, among other things: "[a]ll billing records relating to Joan Jarvis"; "[a]ll contracts and agreements relating to you [sic] bills and/or payment for your services, including managed care contracts, you had in effect with [BCBS] when Joan Jarvis received treatment and/or services from you;" and "[a]ll letters, emails and notes of communications with [BCBS] regarding billing for services provided to Joan Jarvis."

Jarvis filed similar motions to quash each deposition. Jarvis argued that all the requests were "not reasonably limited in time or scope to the events or issues related to this litigation," sought privileged information, and were overbroad. In addition, she asserted that the January 2013 deposition requesting contracts and

communications with BCBS "for treatment unrelated to the dog bite incident at issue" violated the collateral source rule.

Parkan responded to Jarvis's motions to quash. Parkan argued the discovery was relevant to the following issues:

- The accurate amount of Jarvis's medical bills.

- The proper identity of the providers of services.

- The amount of insurance payments and/or adjustments.

- The existence of any managed care contracts between the providers and BCBS including any contracts/agreements relating to the effect of the provider accepting insurance payments.

- The total amount of medical expenses "actually paid or incurred" by or on behalf of Plaintiff.

- Whether the billed amounts are reasonable charges.

Parkan alleged that Jarvis received medical bills from two surgical facilities and the bills are dated four days apart, while the two surgeries on her hand were seven months apart. Parkan stated he had learned through discovery that Dr. Polsen performed other plastic surgery on Jarvis. He sought Jarvis' billing records for "surgeries during the same time frame as her services for the dog bite at issue." Parkan alleged the billing records were necessary to sort out exactly what medical expenses had been paid or incurred in the course of fixing Jarvis's hand. Parkan further argued that he was entitled to discovery of the managed care contracts between BCBS and either Dr. Polsen or the surgery centers to determine "the existence of any agreement or contract with BCBS relating to services provided to

4

Plaintiff which affected the ability or right of the facilities and/or Dr. Polsen to seek payments from Plaintiff for their services."

At the hearing on Jarvis's motions to quash, she argued that Parkan's requests (1) were overbroad, (2) violated the Health Insurance Portability and Accountability Act ("HIPAA"), and (3) violated an antitrust provision with regard to insurance contracts. Parkan responded by stating his need for billing records of other surgeries and the contracts with BCBS. According to Parkan, he has received billing records for the hand surgery from Dr. Polsen, South Shore Surgicenter, and S.T.A.E.C. The bills from South Shore Surgicenter and Dr. Polsen add up to $143,483.97. The bills from the two surgical centers appear to be for the same surgery, but are for different amounts. Parkan contends he is requesting the billing records and the insurance contracts in an effort to learn why the surgeries are being billed from two different facilities and why BCBS will not cover much of the cost.

At the conclusion of the hearing, the trial court signed an order overruling the motions to quash and requiring production of the discovery sought in the November deposition by written questions of BCBS and the January deposition by written questions of South Shore Plastic Surgery, Dr. Polsen, and S.T.A.E.C.

In this mandamus proceeding, Jarvis argues that: (1) the billing records for other procedures are privileged and not subject to discovery; (2) the trial court abused its discretion in ordering production of healthcare contracts and other insurance information; (3) many of the discovery requests are overly broad; and (4) the January deposition of her healthcare providers is duplicative and burdensome. We address each argument in turn.

5

## MANDAMUS STANDARD

Mandamus relief is appropriate if a trial court clearly abuses its discretion and no adequate appellate remedy exists. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003). The burden of establishing a clear abuse of discretion and an inadequate appellate remedy is on the party resisting discovery. *Id.* The scope of discovery is largely within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998). Texas Rule of Civil Procedure 192.3 permits a party to "obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Tex. R. Civ. P. 192.3.

If a trial court erroneously orders privileged matters to be disclosed or compels overly broad discovery, it has clearly abused its discretion and mandamus is the appropriate remedy. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995). Because discovery is limited to matters that are relevant to the case, requests for information that are not reasonably tailored as to time, place, or subject matter amount to impermissible "fishing expeditions." *See CSX Corp.*, 124 S.W.3d at 152; *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995). Requests for production must be "reasonably tailored to include only matters relevant to the case." *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998).

ANALYSIS

## I. The medical billing records for unrelated procedures are privileged.

Jarvis seeks to quash discovery of billing records related to procedures other than those directly related to her hand injury. Specifically, she points to the following items. Items 1 and 2 of Parkan's January deposition notice ask Dr. Polsen, South Shore, and S.T.A.E.C. for "[a]ll billing records relating to Joan Jarvis." In addition, items 4 through 9 of his November deposition notice ask BCBS for records of "[a]ll payments made to [those entities] for services rendered to Joan Jarvis." Jarvis argues the billing records unrelated to the hand injury are protected by the physician-patient privilege. We agree.

Under rule 509 of the Texas Rules of Evidence, "[c]onfidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed." Tex. R. Evid. 509(c)(1). Likewise, "[r]ecords of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed." *Id.* 509(c)(2). The privilege is not limited solely to records held by a physician, but may extend to those held by certain persons acting at the direction of a physician or who are involved in the patient's consultation, examination, or interview. *Id.* 509(a)(3). The purposes of the privilege are to: (1) encourage communications necessary to effective medical treatment, and (2) prevent unnecessary disclosure of highly personal information. *R.K. v. Ramirez*, 887 S.W.2d 836, 840 (Tex. 1994) (orig. proceeding).

Parkan argues that an exception applies to the privilege because he is only requesting billing records, not medical records, and Texas Rules of Evidence 509(e)(3) and (4) provide an exception to the privilege Jarvis claims. Under those sections, there is no physician-patient privilege:

> (3) when the purpose of the proceedings is to substantiate and collect on a claim for medical services rendered to the patient, and

> (4) as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense.

Parkan first argues that this case falls under subsection (3) because Jarvis is seeking to "collect on a claim for medical services rendered to the patient." Jarvis's claim against Parkan is one for personal injuries, however. Her claim is not directed toward her surgeon, nor is the surgeon attempting to collect for medical services. Therefore, the exception described in subsection (3) does not apply. *Cf. In re Collins*, 286 S.W.3d 911, 916 (Tex. 2009) (orig. proceeding) (information relevant to medical malpractice claim not subject to privilege).

With regard to the exception described in subsection (4), Parkan argues that billing records, unlike medical records, are not privileged under Rule 509. The supreme court analyzed the patient-litigant exception to the physician-patient privilege in *R.K. v. Ramirez*. The court held that this exception applies when: (1) the records are relevant to the condition at issue in the litigation, and (2) the condition contained in the records is relied upon as a "part" of a party's claim or defense. 887 S.W.2d at 840. Whether a plaintiff's condition is a "part" of a claim is determined from the pleadings, without reference to the evidence that is

8

allegedly privileged. *R.K.*, 887 S.W.2d at 843 n. 7; *In re Doe*, 22 S.W.3d 601, 609 (Tex. App.—Austin 2000, orig. proceeding). To be a "part" of a claim or defense, the condition itself must be a fact that alone carries legal significance under the substantive law. *R.K.*, 887 S.W.2d at 842–43 ("Because relevance is defined so broadly, virtually any litigant could plead some claim or defense to which a patient's condition could arguably be relevant and the privilege would cease to exist. We reject this alternative as well."). The supreme court observed that "[c]ommunications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an 'ultimate' issue of a claim or defense, or if the condition is merely tangential to a claim rather than 'central' to it." *Id*. at 842.

Parkan cites no authority distinguishing between medical billing records and medical records for purposes of application of the physician-patient privilege. At least one of our sister courts of appeals has included medical billing records within the privilege as contemplated by Rule of Evidence 509. *See In re Dolezal*, 970 S.W.2d 650, 653 (Tex. App.—Corpus Christi 1998, orig. proceeding) (concluding billing records were privileged under Rule 509). We need not decide, however, whether all medical billing records are covered by the privilege. Because the medical bills at issue here record the identity, diagnosis, evaluation, or treatment of Jarvis, they are covered by the privilege. Tex. R. Evid. 509(c)(2).

Billing records are also covered by HIPAA, upon which Jarvis relies. HIPAA defines the term "health information" as including any information that "relates to the . . . past, present, or future payment for the provision of health care to an individual." 42 U.S.C. § 1320d(4). HIPAA permits protected health

information to be revealed in response to a discovery request if the parties agree to a protective order and have presented it to the court, or if they have asked the court for a protective order (as Jarvis did). 45 C.F.R. § 164.512(e)(1). The HIPAA provisions do not create a privilege against production or admission of evidence; they merely create a procedure for obtaining protected medical records in litigation. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925-926 (7th Cir. 2004); *see also* Fed. R. Evid. 501. Thus, HIPAA does not alter our privilege analysis.

In deciding whether the subsection (4) exception to the privilege applies, we must look to Jarvis's pleadings to determine whether billing records for surgeries other than her hand surgery are a "part" of her claim or Parkan's defense. Jarvis's pleadings are limited to allegations of negligence, negligence per se, and strict liability with regard to the dog bite she received on her hand. Jarvis has stated that she is only seeking recovery for damage to her hand. Applying the *R.K.* standards to this case, billing records for plastic surgery other than surgery performed on Jarvis's injured hand are not a "part" of either Jarvis's claims or Parkan's defense. While Parkan alleges a need for the bills to "sort out" discrepancies, that is an evidentiary issue that can be explored in other ways, not an ultimate issue of a claim or defense. Accordingly, the exception to the privilege does not apply to those bills. *See R.K.*, 887 S.W.2d at 842.

For these reasons, we hold that the billing records for procedures unrelated to Jarvis's hand injury are protected by the physician-patient privilege and are not discoverable under the exceptions to that privilege raised by Parkan. The trial court clearly abused its discretion by ordering their production in response to items

1 and 2 of the January deposition notice and items 4 through 9 of the November deposition notice.

## II.     The collateral source rule does not bar discovery of the BCBS contracts.

Parkan also seeks discovery from BCBS, Dr. Polsen, South Shore, and S.T.A.E.C. of their contracts and communications relating to payment for the services rendered to Jarvis.  The particular requests are quoted above and appear in items 3 through 5 of the January deposition notice and 1 through 3 of the November deposition notice.  Parkan argues this information is calculated to lead to the discovery of relevant evidence because the contracts are necessary to aid in determining what expenses were reasonable and whether the medical providers accepted payments for less than amounts billed based on contracts with insurance carriers.

Jarvis argues these requests run afoul of the "collateral source rule."  This argument does not comport with Jarvis's motions to quash below, which only argued the collateral source rule in response to the January notice, and even there argued only that producing the contracts and correspondence "for treatment unrelated to the dog bite incident at issue" would violate the collateral source rule.  Yet even if Jarvis had preserved her argument regarding the collateral source rule with respect to both depositions and all contracts (whether related or unrelated), we hold that the trial court did not clearly abuse its discretion in rejecting that argument.

Section 41.0105 of the Texas Civil Practice and Remedies Code provides that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."  The supreme court has

determined that section 41.0105 limits recovery, and consequently the evidence at trial, to expenses that the provider has a legal right to be paid. *Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2012). The court specifically determined that "the collateral source rule continues to apply to such expenses, and the jury should not be told that they will be covered in whole or in part by insurance. Nor should the jury be told that a health care provider adjusted its charges because of insurance." *Id*. at 400.

In *Haygood*, the court further discussed the collateral source rule and section 41.0105 in determining whether a plaintiff could recover full "list" prices for medical services in cases when a health care provider has agreed to accept payment of lower reduced rates by virtue of contracts with insurance carriers and Medicare and Medicaid regulations. The court first made clear that Texas law allows a plaintiff to recover "reasonable medical expenses." Determining what expenses are "reasonable" in a given case, however, has become difficult given the modern practice of requiring medical providers—by virtue of contracts with insurance carriers or applicable regulations—to accept payments of far less than the amounts billed. The court held that limiting a plaintiff to recovery of these reduced fees did not violate the collateral source rule. *Id.* at 397–98.

In reaching its decision, the court noted that the purpose of the collateral source rule is to prevent a windfall to the defendant when the plaintiff's costs are paid by a third party for the benefit of the plaintiff. *See id.* at 395. The court first specifically noted that the reduced rates were either determined to be "reasonable" under Medicare or other programs or were reached by agreement between willing providers and willing insurers. *Id*. at 394–95. Thus, the defendant was still

12

required to pay for reasonable expenses and received no windfall. On the other hand, the court stated that allowing a plaintiff to recover for elevated expenses that a provider could not legally recover would create a windfall to the plaintiff. *See id.* at 395. The court concluded that "the common-law collateral source rule does not allow recovery as damages of medical expenses a health care provider is not entitled to charge." *Id.* at 395.

Parkan contends that "whether Blue Cross Blue Shield is a 'collateral source' is of no consequence to the determination of the discovery issues in this case." Parkan further argues that "the Texas Supreme Court in *Haygood* made it clear that insurance payments, adjustments and contracts affecting the legal right of the healthcare provider to be paid are the very issues that are relevant at trial." We agree. Parkan is entitled to discovery of the insurance contracts between BCBS and Jarvis's healthcare providers to aid in determining whether the providers are required to accept payments of less than the amounts billed. Jarvis has failed to meet her burden to show that production of the insurance contracts will not lead to information relevant to Parkan's defense.

Jarvis further contends that Parkan seeks "to interpret the contract between the Healthcare Providers and BCBS, find that the Healthcare Providers are in breach and then reduce the paid/incurred amount based upon their findings." Jarvis argues that Parkan seeks to bring a breach of contract claim against either BCBS or Jarvis's healthcare providers and argues that Parkan has failed to show privity of contract or that he is a third-party beneficiary.

Parkan is entitled to discovery of the insurance contracts to aid in determining whether the providers are required to accept payments of less than the

amounts billed. The record does not reflect that Parkan is attempting to bring a breach of contract action, nor is he required to do so to be entitled to discovery of the insurance contracts. Accordingly, Jarvis has not shown that the trial court clearly abused its discretion in ordering their production.

## III. The requests for health insurance contracts are not overly broad.

Jarvis next contends that "[t]he requests in this case are overbroad as to the time period and relevancy to the matter at hand." Discovery is limited to matters relevant to the case. *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 814 (Tex.1995) (orig. proceeding); *see also* Tex. R. Civ. P. 192 cmt. 1 ("While the scope of discovery is quite broad, it is nevertheless confined by the subject matter of the case and reasonable expectations of obtaining information that will aid resolution of the dispute."). A party's requests must show a reasonable expectation of obtaining information that will aid in the resolution of the dispute. *In re CSX Corp.*, 124 S.W.3d at 152. Therefore, discovery requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam). "A reasonably tailored discovery request is not overbroad merely because it may include some information of doubtful relevance," however. *Id.*

The Texas Supreme Court has rejected on overbreadth grounds discovery requests that encompass time periods, products, or activities beyond those at issue in the case. *See K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (in case involving plaintiff's abduction from defendant's parking lot, request for description of all criminal conduct at the location during the preceding seven years held overbroad); *Dillard Dep't Stores*, 909 S.W.2d at 492 (in case of false arrest at

14

Houston department store, request for every claims file or incident report from every store in the company's chain involving false arrest, civil rights violations, or use of excessive force held overbroad); *Texaco*, 898 S.W.2d at 814–15 (in case involving exposure to toxic chemicals that allegedly caused asbestos-related disease, request for "all documents written by [defendant's safety director] that concern[ed] safety, toxicology, and industrial hygiene, epidemiology, fire protection and training" held overbroad); *General Motors Corp. v. Lawrence*, 651 S.W.2d 732, 734 (Tex. 1983) (in case involving allegedly defective fuel filler necks in particular model truck, requests concerning fuel filler necks in every vehicle ever made by General Motors held overbroad).

Jarvis alleges that the requests for BCBS to produce all managed care contracts and other specified items relating to services provided to Jarvis by Dr. Polsen, as well as all contracts for South Shore and S.T.A.E.C. to accept BCBS payments as full payment for services rendered to Jarvis, are not limited in time or scope and are overly broad on their face. These requests are quoted above and appear in items 1 through 3 of the November deposition notice.[1]

We disagree with Jarvis's argument that these requests are overbroad. As we explained above, Parkan is entitled to discovery of the insurance contracts between BCBS and Jarvis's healthcare providers to aid in determining whether the providers are required to accept payments of less than the amounts billed. Moreover, the requests do not include contracts other than those at issue. Rather,

---

[1] Jarvis also argues that items 4, 6, and 8 of the November deposition notice and items 1 and 2 of the January deposition notice are overbroad. We need not address this argument, however, because we have held in Part I that production of those particular items cannot be compelled because they are privileged.

15

they are specifically limited to contracts that relate to "services provided to Joan Jarvis" by Dr. Polsen, South Shore, and S.T.A.E.C. In her mandamus petition, Jarvis does not explain how she believes the requests should be further limited.

For these reasons, Jarvis has not met her burden to show the trial court clearly abused its discretion in ordering production of the health insurance contracts. Parkan's stated need for the health insurance contracts certainly does not rise to the level of a "fishing expedition." Parkan is entitled to review the documents to determine whether Jarvis's healthcare providers accepted payments of less than the amounts billed. In that regard, the information may lead to evidence relevant to Parkan's defense. Therefore, we hold the trial court did not clearly abuse its discretion in concluding that the requests in items 1 through 3 of the November deposition notice are not overly broad.

## IV. Jarvis's arguments that the depositions on written questions are duplicative or burdensome were not raised in the trial court.

Finally, Jarvis contends that the January deposition notice to Dr. Polsen, South Shore, and S.T.A.E.C. is duplicative because it includes questions that have already been answered by these healthcare providers. According to Jarvis, the only distinguishing feature is the request for the health insurance contracts and added questions regarding insurance billing.

In her motion for protective order filed in the trial court, Jarvis argued that the deposition sought privileged material, that it was overbroad and not reasonably limited in time or scope, and that copies of the health insurance contracts and billings were not discoverable because their production would violate the collateral

source rule. Jarvis did not request a protective order from the trial court on the grounds that the January deposition was duplicative or burdensome.

Equity generally is not served by issuing an extraordinary writ against a trial court judge on a ground that was never presented in the trial court and that the trial judge thus had no opportunity to address. *See In re Le*, 335 S.W.3d 808, 814 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). Accordingly, a request for action by the trial court and a refusal of that request is generally a predicate to mandamus relief. *In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding). The requirement of a predicate request and adverse ruling is excused, however, when such a request would have been futile and the trial court's refusal little more than a formality. *In re Brown*, 277 S.W.3d 474, 482–83 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding). To determine whether a request would have been futile, appellate courts examine whether the request would have added anything for the trial court's consideration. *Id.*

If Jarvis had sought protection from the trial court based on the duplicative nature of the requests, the court could have narrowed the requests to include only those matters that were not potentially duplicative, thus obviating the need to grant mandamus relief. Voicing these complaints in the trial court would have drawn the court's attention to the issue and added relevant information for its consideration. We see no indication that it would have been futile for Jarvis to have raised the duplicative nature of the requests in the trial court. Because Jarvis did not satisfy the requirement of a predicate request and refusal by the trial court, she is not entitled to mandamus relief on her duplication argument. *See Le*, 335 S.W.3d at

815 (relator not entitled to mandamus relief because she failed to raise deficiency in sanctions order with the trial court).

## CONCLUSION

For the foregoing reasons, we conditionally grant partial mandamus relief and direct the trial court to vacate the portions of its order that require production, in response to items 1 and 2 of the January deposition and items 4 through 9 of the November deposition, of billing records related to procedures other than those directly related to Jarvis's hand injury. We are confident the trial court will act in accordance with this opinion. The writ will issue only if the trial court fails to do so.

With regard to the other arguments raised by Jarvis, we deny her petition for writ of mandamus. We lift the stay ordered by this Court on March 18, 2013.


/s/     J. Brett Busby
Justice


Panel consists of Justices Frost, Brown, and Busby.