IN RE Amber TURNEY, Individually and as Personal Representative of David Minx (Deceased), Relator

NO. 14-16-00999-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed June 15, 2017

Matias Jose Adrogue, Leila Mariam El-Hakam, Robert Stephen Kaase, Houston, TX, for Relator.

William Tracy Freeman, Houston, TX, for Real Party in Interest.

Panel consists of Justices Boyce, Busby, and Wise.

**OPINION**

William J. Boyce, Justice

Relator is Amber Turney. Real Parties-in-Interest are Houston Motor Speedway Corp. d/b/a Houston Motorsports Park Houston Speedway Acquisition, LLC, John Thigpen, and Dean Baker (referred to collectively as the "Motor Speedway Defendants"). This suit arises from the death of David Minx, Sr. ("Decedent") in a single-vehicle collision while he was driving on a race track owned or operated by the Motor Speedway Defendants. Among other defenses, the Motor Speedway Defendants assert that the collision occurred because Decedent had an enlarged heart and suffered a heart attack while driving on the track at a high rate of speed.

On December 9, 2016, the predecessor judge of the 61st District Court in Harris County ordered relator to sign and return a HIPAA medical authorization permitting the Motor Speedway Defendants to obtain Decedent's medical records for the five years prior to his death. The predecessor judge denied relator's motion to quash the Motor Speedway Defendants' depositions on written questions and subpoenas duces tecum, which requested Decedent's medical service providers to produce all of Decedent's medical records.

Relator, Individually and as Representative of Decedent, filed a petition for writ of mandamus in this court on December 15, 2016. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. Relator argues that Decedent's medical records are protected by the physician-patient privilege, and therefore asks this court to compel the trial judge to: (1) vacate the Medical Authorization Order, and (2) to quash the Motor Speedway Defendants' depositions on written questions and subpoenas duces tecum. Alternatively, relator asks that we compel the trial judge to conduct an *in camera* review of Decedent's medical records to prevent the disclosure of privileged records.

We abated the mandamus proceeding to allow the Honorable Fredericka Phillips, who became judge of the 61st District Court on January 1, 2017, to consider all issues and motions addressed in the Medical Authorization Order. On February 15, 2017, relator filed a motion for Judge Phillips to reconsider the Medical Authorization Order and the denial of relator's objections to the depositions and subpoenas, motion to quash, and motion for protective order. On March 15, 2017, Judge Phillips denied the motion to reconsider. Accordingly, we proceed with considering relator's petition for writ of mandamus.

Decedent's medical records are protected by the physician-patient privilege to the extent that they contain confidential communications between a physician and the patient related to any services the physician rendered or contain information regarding the patient's identity, diag-

nosis, evaluation, or treatment. *See* Tex. R. Evid. 509(c). The patient-litigant exception to that privilege applies to medical records that are relevant to the condition of Decedent's heart because the Motor Speedway Defendants rely on Decedent's alleged heart condition as part of their defense. *See* Tex. R. Evid. 509(e)(4). Accordingly, the trial court did not abuse its discretion by ordering relator to sign an authorization permitting access to Decedent's medical records. The trial court did abuse its discretion by failing to (1) conduct an *in camera* review of the medical records sought by the Motor Speedway Defendants to determine which medical records, if any, are relevant to Decedent's alleged heart condition, and (2) limit discovery to those relevant records. We therefore deny in part and conditionally grant in part the petition for writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Motor Speedway Defendants served depositions on written questions and subpoenas duces tecum on 12 medical service providers or pharmacies requesting the production of all medical and billing records for any medical treatment received by Decedent.

Relator filed objections to the depositions and subpoenas, a motion to quash, and a motion for protective order. The Motor Speedway Defendants then filed a motion to compel relator to provide them with a signed medical authorization permitting the release of Decedent's medical records, and a response requesting that the trial court deny relator's objections, motion to quash, and motion for protective order.

At the December 9, 2016 hearing of these motions, the trial court orally denied relator's objections to the depositions and subpoenas, motion to quash, and motion for protective order. The trial court also signed the Medical Authorization Order, which orders relator to sign and return a HIPAA medical authorization permitting the Motor Speedway Defendants to obtain of Decedent's medical records for the five years prior to his death.

## II. MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The appellate court reviews the trial court's application of the law de novo. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The relator must establish that the trial court could reasonably have reached only one conclusion. *Id.*

While the scope of discovery is generally within the trial court's discretion, the trial court must impose reasonable discovery limits. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam). Discovery requests must be reasonably tailored to include only matters relevant to the case. *See In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam). Discovery may not be used as a fishing expedition. *In re Am. Optical Corp.*, 988 S.W.2d at 713.

■ "Mandamus is proper when the trial court erroneously orders the disclosure of privileged information because the trial court's error cannot be corrected on appeal." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam). "If the trial court issues an erroneous order requiring the production of privileged documents, the party claiming the privilege is left without an adequate appellate remedy." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding).

### III. ANALYSIS

### A. Who Bears the Burden of Proffering Evidence Addressing the Claimed Privilege?

Before reaching the discoverability of the records at issue, we first must address a threshold issue regarding the burden of proffering evidence concerning the claimed privilege and any exceptions.

Relator argues the trial judge abused her discretion by allowing the production of Decedent's medical records because these records are protected from disclosure by Texas Rule of Evidence 509(c), which provides:

> In a civil case, a patient has a privilege to refuse to disclose and to prevent any other person from disclosing:
>
> (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and
>
> (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician.

Tex. R. Evid. 509(c). This physician-patient privilege does not apply "[i]f any party relies on the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition." Tex. R. Evid. 509(e)(4).

Relying in part on *In re Jarvis*, 431 S.W.3d 129, 136 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding), relator contends that (1) "it is an abuse of discretion for a trial court to order production of medical and billing records for injuries unrelated to those alleged in the lawsuit," and (2) "the requests for all of Decedent's medical records are overbroad, invade the patient-physician privilege under Texas law, and are outside the scope of discovery in this case."

Relying in part on *In re Kristensen*, No. 14-14-00448-CV, 2014 WL 3778903, at *5–6 (Tex. App.—Houston [14th Dist.] July 31, 2014, orig. proceeding) (mem. op.), the Motor Speedway Defendants contend mandamus relief is not warranted because "the record does not indicate that relator made a prima facie showing that the physician patient privilege applies to Minx's medical records . . . ."

■ The general rule is that "[p]leading and producing evidence establishing the existence of a privilege is the burden of the party seeking to avoid discovery." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279. "The party asserting the privilege must establish by testimony or affidavit a prima facie case for the privilege." *Id.* "Once the party claiming privilege presents a prima facie case that the documents are privileged, the burden shifts to the party seeking production to prove that an exception to the privilege applies." *Id.* at 279–80.

Texas Rule of Civil Procedure 193.4(a) requires the party asserting a privilege to present evidence that is "necessary" to support the privilege. *See* Tex. R. Civ. P. 193.4(a). Although they assail the absence of testimony or an affidavit, the Motor Speedway Defendants do not articulate how an order specifically aimed at obtain-

ing medical records can avoid encompassing information and materials protected by the physician-patient privilege under Rule 509(c). Nothing in this record suggests that additional evidence is "necessary" under Rule 193.4(a) to bring rule 509(c)'s physician-patient privilege protection into play when a party subpoenas medical records and requests an order for a medical records authorization. *See* Tex. R. Evid. 509(c)(2) (a patient may prevent the disclosure of "a record of the patient's identity, diagnosis, evaluation or treatment created or maintained by a physician"); *see also In re Jarvis*, 431 S.W.3d at 135 (defendant in personal injury action subpoenaed plaintiff's medical billing records; those that were unrelated to her claimed hand injury were protected by physician-patient privilege because the medical bills at issue record the identity, diagnosis, evaluation, or treatment of Jarvis).[1]

■ Accordingly, Decedent's medical records (to the extent that they contain

confidential communications between a physician and the patient related to any services the physician rendered or information regarding the patient's identity, diagnosis, evaluation, or treatment) are privileged. *See* Tex. R. Evid. 509(c). The Motor Speedway Defendants bear the burden of establishing the applicability of the patient-litigant exception to the physician-patient privilege.[2]

## B. The Patient-Litigant Exception Applies to Medical Records Relevant to the Decedent's Alleged Heart Condition

■ The Texas Supreme Court's test for the patient-litigant exception recognizes that "just because a condition may be 'relevant' to a claim or defense does not mean a party 'relies upon the condition as a part of the party's claim or defense.'" *R.K. v. Ramirez*, 887 S.W.2d 836, 842 (Tex. 1994). "[T]he patient-litigant exception to the privilege applies when a party's condition relates in a significant way to a party's

1. In *In re Kristensen*, No. 14-14-00448-CV, 2014 WL 3778903, at *5–6, we held that "[b]ecause the record does not indicate that relators made a prima facie showing that the physician-patient privilege applies to Kristensen's medical records, relators have not demonstrated entitlement to mandamus relief from the trial court's order that Kristensen provide a medical records release authorization." *In re Kristensen* arguably could be read to suggest that the party invoking the privilege must proffer evidence demonstrating the inapplicability of the patient-litigant exception in contravention of *In re Jarvis*, which places no such obligation on the party asserting the privilege. *See In re Jarvis*, 431 S.W.3d at 134-36. To the extent of any tension between *In re Jarvis* and *In re Kristensen*, the earlier decision in *In re Jarvis* controls. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is

bound by the prior holding of another panel of this court."); *cf. In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279–80.

2. *See In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 280; *Granada Corp. v. Hon. First Court of Appeals*, 844 S.W.2d 223, 227–28 (Tex. 1992) (recognizing that the crime-fraud exception to the attorney-client privilege applies only if a prima facie case of contemplated fraud is made by the party seeking discovery); *In re Park Cities Bank*, 409 S.W.3d 859, 868–69 (Tex. App.—Tyler 2013, orig. proceeding) ("Once the party resisting discovery establishes a prima facie case that the documents are privileged [under the attorney-client privilege], the burden shifts to the discovering party to refute the privilege claim"); *Coats v. Ruiz*, 198 S.W.3d 863, 876 (Tex. App.—Dallas 2006, no pet.) (explaining that "[t]he party claiming the exception to the [attorney-client] privilege bears the burden of establishing a prima facie case" that an exception applies); *In re AEP Tex. Cent. Co.*, 128 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, orig. proceeding) (same).

claim or defense." *Id.* "Communications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an 'ultimate' issue for a claim or defense, or if the condition is merely tangential to a claim rather than 'central' to it." *Id.* "The scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense. This is accomplished, we believe, by requiring that the patient's condition, to be a 'part' of a claim or defense, must itself be a fact to which the substantive law assigns significance." *Id.* "[A] party cannot truly be said to 'rely' upon a patient's condition, as a legal matter, unless some consequence flows from the existence or non-existence of the condition." *Id.* "[T]he information communicated to a doctor or psychotherapist may be relevant to the merits of an action, but in order to fall within the litigation exception to the privilege, the condition itself must be of legal consequence to a party's claim or defense." *Id.*

"When this ultimate-issue test is not satisfied, it is an abuse of discretion to order production of the medical records." *In re Morgan*, 507 S.W.3d 400, 404 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding).

The court reviews the pleadings to determine whether the requested medical records are relevant to a medical or mental condition at issue in the case. *See Ramirez*, 887 S.W.2d at 844; *In re Morgan*, 507 S.W.3d at 404. The Motor Speedway Defendants allege in their answer that Decedent's death was attributable to a fatal heart condition. The Motor Speedway Defendants argue that Decedent's medical records are relevant because there is evidence that Decedent may have suffered a

heart attack shortly before the collision. This evidence is as follows. Decedent died during a solo race at Houston Motorsports Park. He was traveling at a speed of approximately 141.38 miles per hour when he crossed the finish line at the one-eighth mile track. According to the Harris County Sheriff's Office Incident Report, Decedent's stepfather, and an onsite fire marshal report, at no point after crossing the finish line did Decedent appear to slow down. Decedent's stepfather reportedly approached someone at the track after the accident and stated: "I wonder if he had a heart attack." An autopsy report revealed that Decedent's heart weighed 450 grams and was enlarged. Decedent's left ventricle showed hypertrophy, including "75 percent atherosclerotic stenosis of the proximal left anterior descending coronary artery." The normal weight of an adult male's heart is 233 grams to 383 grams and 75 percent stenosis of the artery is associated with sudden death. Thus, the alleged condition of Decedent's heart is part of Defendants' defense.

Relator argues that this defense does not come within the patient-litigant exception based on *In re Nance*, 143 S.W.3d 506 (Tex. App.—Austin 2004, orig. proceeding). In *Nance*, a medical malpractice death case, the defendant hospitals argued that the patient's medical and psychiatric records are relevant to and are part of their causation defense because the patient's mental health history may establish heavy alcoholism that, in turn, may show that she was predisposed to the bleed that resulted, and that this pre-disposition, and not the surgery, caused the bleed. *Id.* at 512.[3] The Austin Court of Appeals concluded that the issue of whether the patient was an alcoholic or a heavy drinker is, at most, an

---

3. The defendants alleged that Ms. Nance was admitted for "possible alcohol withdrawal syndrome," but the hospital records also allegedly indicate that Ms. Nance denied regular use of alcohol. *Id.* at 509.

intermediate issue of fact regarding the defensive theory that a pre-existing condition caused her death. *Id.* The court held that "[a]lthough the hospitals pleaded preexisting condition as ... an affirmative defense, that defensive theory is in the nature of an inferential rebuttal, not an ultimate issue of fact that alone has legal significance", and that "the records in question, if protected by the physician-patient privilege, are not discoverable under the patient-litigant exception to that privilege." *Id.*

We find this part of the *Nance* decision inconsistent with the Texas Supreme Court's decision in *Ramirez*, a medical malpractice case in which the plaintiffs alleged the doctor had a medical and emotional condition that affected his care of a patient. 887 S.W.2d at 839. The supreme court held that medical records related to the doctor's alleged condition came within the patient-litigant exception because a jury determination of that condition is of legal significance to the plaintiff's negligence claims. *Id.* at 843–44. Thus, under *Ramirez*, the test is not whether the condition should be classified as an inferential rebuttal issue, but whether a jury determination of the existence of the condition would have legal significance to the claims or defenses at issue.

We conclude that the Motor Speedway Defendants have established that the patient-litigant exception applies to medical records related to the condition of Decedent's heart because such condition is part of Defendants' defense that the collision was caused, not by Defendants, but by a condition of Decedent's heart, and a jury determination of the existence of that condition and whether it caused the collision would have legal significance. *See Ramirez*, 887 S.W.2d at 842–43; *M.A.W. v. Hall*, 921 S.W.2d 911, 914 (Tex. App.—

Houston [14th Dist.] 1996, orig. proceeding).

## C. An *In Camera* Inspection is Warranted

Relator argues that, even if the patient-litigant exception applies to medical records relevant to Decedent's alleged heart condition, the trial judge abused her discretion by allowing production of all of Decedent's medical records for the five years prior to his death without an *in camera* review to limit production to just those records.

Relator's argument is supported by *Ramirez*, and two decisions of our court. In *Ramirez*, the supreme court conditionally granted a writ of mandamus, finding, after an *in camera* review of the records, the production ordered by the trial judge was overly broad and that some of the information was irrelevant to the condition at issue. 887 S.W.2d at 844. The supreme court stressed that the highly personal nature of this information places a heavy responsibility on the trial court to prevent any disclosure that is broader than necessary. *Id.* Likewise, in *In re Jarvis*, 431 S.W.3d at 136, our court held that the trial court abused its discretion by ordering the production of the plaintiff's medical billing records that were unrelated to her claimed hand injury because such records were protected by physician-patient privilege. Also, in *M.A.W.*, 921 S.W.2d at 914–15, a medical malpractice case, our court held that although plaintiffs were entitled discovery of the treating doctor's medical records showing substance abuse by the doctor, the portion of the records unrelated to substance abuse is irrelevant and therefore remains privileged.

 "Therefore, even if a condition is 'part' of a party's claim or defense, patient records should be revealed only to the extent necessary to provide relevant evidence relating to the condition alleged."

*Ramirez*, 887 S.W.2d at 843. "Thus courts reviewing claims of privilege and inspecting records *in camera* should be sure that the request for records and the records disclosed are closely related in time and scope to the claims made." *Id.* "Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.* Even when the patient-litigant exception applies, "when requested, the trial court must perform an *in camera* inspection of the document produced to assure that the proper balancing of interest ... occurs before the production is ordered." *Id.*; *see also M.A.W.*, 921 S.W.2d at 914–15.

We conclude that the trial court abused its discretion by permitting the production of Decedent's medical records without first reviewing the records *in camera* to determine which, if any, are relevant to Decedent's alleged heart condition, and by not limiting production to just those records, as well as redacting any irrelevant information from any records found to be relevant.

■ The Motor Speedway Defendants argue that relator waived her right to an *in camera* review of the medical records because relator did not specifically request the trial court to conduct an *in camera* review. Relator's motion to reconsider argued that Defendants' requests for all of Decedent's medical records invade the physician-patient privilege and are overbroad (citing *Ramirez* and *Jarvis*), and that the Medical Authorization Order provides no mechanism to allow relator to assert the privilege for records unrelated to the conditions relevant to the claims and defenses in this case. An *in camera* inspection would serve as a mechanism for excluding the production of privileged records. Relator also incorporated and attached her petition for writ of mandamus as Exhibit C to the motion to reconsider. The petition expressly requests that an *in camera* inspection be ordered. Thus, the motion to reconsider provided the trial court sufficient notice of relator's desire for an *in camera* inspection.

■ The Motor Speedway Defendants also argue that they are entitled to the production of all of Decedent's medical records under the "offensive use doctrine", which prohibits a party from asserting a privilege to withhold evidence which would materially weaken or defeat the asserting party's claims. *See Ramirez*, 887 S.W.2d at 840; *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) (holding that plaintiff could not assert privilege for medical records that were relevant to and possibly validated the statute of limitation defenses that had been asserted; the trial court found the records to be relevant after an *in camera* review). The Motor Speedway Defendants argue that relator has used the privilege offensively by claiming that Decedent was in reasonably good health at the time of the accident, and simultaneously using the physician-patient privilege to preclude discovery of medical records that might show Decedent was not in good health. In *Ginsberg*, 686 S.W.2d at 108, the supreme court warned that its holding should not be construed as endorsing litigants to engage in "fishing expeditions" into privileged matters. *See also Cantrell v. Johnson*, 785 S.W.2d 185, 189 (Tex. App.—Waco 1990, orig. proceeding) (distinguishing *Ginsberg* because the trial court made no express finding that the documents in question were relevant). Here, however, the Motor Speedway Defendants have not shown and the trial judge has not found that Decedent's medical records (beyond those related to Decedent's alleged heart condition) are relevant. The Motor Speedway Defendants may not use the "offensive use doctrine" as

a fishing expedition to explore all of Decedent's medical records.

## IV. CONCLUSION

The Medical Authorization Order and the denial of the motion to quash were not an abuse of discretion. But the trial court abused its discretion by permitting the production of Decedent's medical records without first reviewing the records *in camera* to determine which, if any, are relevant to Decedent's alleged heart condition, and by not limiting production to just those records.

We therefore deny the petition for writ of mandamus to the extent that it requests our court to compel the trial judge to vacate the Medical Authorization Order and quash the subpoenas for medical records. But we conditionally grant the petition in part, and direct the trial court to: (1) conduct an *in camera* review to determine which records, if any, are relevant to Decedent's alleged heart condition, and (2) and permit discovery of only records relevant to the alleged heart condition.

We are confident the trial court will act in accordance with this opinion. The writ of mandamus shall issue only if the trial court fails to do so.