**CONDITIONALLY GRANT and Opinion Filed November 23, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00938-CV**
_____

**IN RE JAMES ALAN BARNES, ET AL., Relators**

**Original proceeding from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15204**

## OPINION

Before Justices Molberg, Pedersen III, and Garcia
Opinion by Justice Molberg

Relators E.B. and her mother bring original proceedings seeking a writ of mandamus ordering the trial court to set aside orders that denied their motions to quash and ordered the disclosure to Real Party in Interest Richardson Motorsports, LLC. (RPI), a defendant in the proceedings below, of E.B.'s and her mother's privileged mental health records. Because we conclude the trial court abused its discretion in denying the motions and ordering disclosure of this information, and Relators have no adequate remedy by appeal, we conditionally grant the petition, order the trial court to vacate the orders, and vacate the portion of our September 23, 2022 order that granted a stay of those orders.

## I.

Relator E.B., a minor, was injured, along with her father, in a rollover accident involving a Can-Am Commander 1000 XT Side by Side All Terrain Vehicle (ATV) designed, manufactured and marketed by Bombardier Recreational Products, Inc. and sold by RPI. E.B.'s brother was killed in the wreck. Relators sued.[1] E.B.'s petition in the trial court seeks damages against RPI for negligently removing the door netting from the ATV which, she claims, caused her injury. She also asserts a bystander liability claim relating to her contemporaneous view of her brother's death. As to both, she has included a generic, garden-variety request for mental anguish damages—no different than just about any such request found in personal injury suits filed across the State of Texas every day.

During the course of the litigation, RPI subpoenaed E.B.'s "psychological treatment records" from three health care providers.[2] RPI also subpoenaed E.B.'s mother's "psychological records" from Bowen Counselling Solutions, PLLC, although E.B.'s mother was not involved in the wreck, was many miles away at the time it happened, seeks only traditional wrongful death damages in the pending lawsuit, does not allege a cause of action for bystander liability, and, like E.B, makes only an ordinary request for mental anguish damages.

---

[1] E.B. is represented as next friend by her father, Relator James Alan Barnes.

[2] Those three were Rani Pediatrics, Thelma Lopez-Lira, M.D, and Burton A. Kittay, Ph.D.

Relators filed motions to quash the subpoenas and the parties vigorously argued their positions. Generally, Relators claimed the records were privileged; RPI asserted the records were outside the privilege. RPI ultimately withdrew its request for the mother's records and so advised the trial court during a hearing on the motions. Thereafter, Relators' attorneys tendered records of E.B. to the trial court for an in camera inspection. The trial judge later reviewed them outside the presence of counsel.

Without substantive explanation, the court then signed multiple, identical orders denying Relators' motions to quash as to each health care provider and ordering the production of all of E.B.'s records to RPI within one day, including those the court apparently did not review. The trial court did the same as to mother's records, despite RPI's withdrawal of its request for those records.

This series of orders brings the Relators here to request mandamus relief to prevent those records' disclosure. Records allegedly tendered by Relators to the trial court relating to E.B. are held in camera in this Court.[3]

---

[3] Mother's records are not on file with us, and there is no indication they were ever actually tendered to the trial court, which is consistent with RPI having withdrawn its request for those records before the trial court ordered their disclosure. As RPI's counsel told the trial court at a hearing on Relators' motions to quash, "[W]e are withdrawing the request for [the mother's] records." Also not present in our in camera filing are records from Thelma Lopez-Lira, M.D. These records also appear not to have been a part of the trial court's in camera review. The only explanation for this is found in the transcript of the hearing on the motions to quash that suggests Dr. Lopez-Lira had no records responsive to RPI's request.

II.

Mandamus is an extraordinary remedy that is available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Mandamus relief is available when the trial court abuses its discretion and there is no adequate remedy by appeal. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Cap. Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

When documents are alleged to be privileged, "mandamus is appropriate if we conclude that they are privileged and have been improperly ordered disclosed." *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding). A trial court also abuses its discretion "when it fails to adequately inspect documents tendered for an in camera inspection before compelling production 'when such review is critical to the evaluation of a privilege claim.'" *In re Christus Santa Rosa Health Sys.,* 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding) (quoting *In re Living Ctrs.,* 175 S.W.3d at 261). "Mandamus is proper when the trial court erroneously orders the disclosure of privileged information because the trial court's error cannot be corrected on appeal." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding). An appellate remedy is inadequate

when a trial court orders the disclosure of privileged information because, "A party required to disclose privileged matters cannot retract them." *Kavanaugh v. Perkins*, 838 S.W.2d 616, 619 (Tex. App.—Dallas 1992, orig. proceeding) (citing *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978) (orig. proceeding)).

## III.

Relators maintain the records at issue are privileged from disclosure under rules 509 (physician-patient privilege) and 510 (mental health information privilege) of the Texas Rules of Evidence and RPI has failed to demonstrate the litigation exception of those rules negates application of the privileges. They also say many of the records, if not most, are outside the scope of RPI's subpoenas, which they say is overly broad, and are otherwise not relevant. Among its other arguments, RPI insists the records it subpoenaed are exempt from these privileges under the rules' litigation exception because E.B. and her mother have each made a generic claim for mental anguish damages in connection with their causes of action. At least, this is the common theme that permeates RPI's primary arguments, and rules 509 and 510 are central to them.[4]

---

[4] RPI's legal position here first became clear in its response to Relators' motion filed in our Court to stay the district court's orders requiring release of E.B.'s and her mother's mental health care information. To assess the propriety of a stay, the parties necessarily were forced to address the merits of the petition. RPI concisely stated its position: "Relators have placed E.B.'s mental condition in issue in the underlying suit and have shown they are relying on that mental condition as a basis to seek damages. This nullifies the mental health information privilege that might otherwise protect communications between a patient and health care professional from disclosure." The "condition," as is apparent through RPI's district court filings and the remarks of the district court at the hearing on Relators motions to quash, is E.B.'s request for mental anguish damages attached to her two causes of action and her mother's request for the same damages as a part of her wrongful death action. A review of RPI's formal response, although broader than

The two rules of evidence are similar. Rule 509 creates a privilege in a civil case from disclosing "a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient" and any "record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." TEX. R. EVID. 509(c)(1)–(2). Rule 510 establishes a privilege in civil cases from the disclosure of "a confidential communication between the patient and a [mental health] professional" and any "record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." *Id*. at 510(b)(1)(A)–(B). Both rules contain what is commonly known as the litigation or patient-litigant exception, which lifts the privilege "[i]f any party relies on the patient's physical, mental, or emotional condition *as a part of* the party's claim or defense and the communication or record is relevant to that condition." *Id*. at rule 509(e)(4), 510(d)(5) (emphasis added).

## IV.

At the outset, it is important to note that as the parties seeking relief, Relators bear the burden to provide the Court with a sufficient record to establish their right to relief. *Walker*, 827 S.W.2d at 837. It is not this Court's duty to "cut through the 'red tape' and reach the merits when the record is defective." *In re Meehan*, No. 05-

its response to Relators' motion to stay, reveals that the claim for mental anguish damages remains the foundation of RPI's claim of waiver.

–6–

21-00337-CV, 2021 WL 2943938, at *1 (Tex. App.—Dallas July 13, 2021, orig. proceeding) (mem. op.) (citation omitted); *see also In re Butler*, 270 S.W.3d 757, 759 (Tex. App.—Dallas 2008, orig. proceeding).

Relators' burden to provide this Court with a sufficient record requires Relators to request that any documents submitted to the trial court for in camera inspection be carried forward under seal so that the appellate court can evaluate this information. *In re Trujillo*, No. 08-13-00185-CV, 2015 WL 799439, at *1 (Tex. App.—El Paso, Feb. 25, 2015, orig. proceeding) (mem. op.); *Humphreys v. Caldwell*, 881 S.W.2d 940, 944 (Tex. App.—Corpus Christi–Edinburg 1994, orig. proceeding), *mand. granted*, 888 S.W.2d 469 (Tex. 1994) (per curiam) (citing *Pope v. Stephenson*, 787 S.W.2d 953, 954 (Tex. 1990)). Here, there is no indication that Relators have attempted to insure the documents they submitted to the trial court in camera were properly brought forward to this Court.

Instead, on September 23, 2022, Relators submitted documents to this Court with an "In Camera Motion," stating that they did so to protect their assertion of privilege and objections and so "that this Honorable Court may make its own determination as to whether said records, attached [t]hereto as Exhibit 1, are privileged." In doing so, Relators' counsel merely represented that, "Relators provide the Court with the privileged records made the subject of the trial court's order. . . ." The documents also appear to be in response to Relators' request for their own records, not RPI's request pursuant to its depositions on written questions.

The documents submitted to this Court are not certified by, or under seal of, the trial court, s*ee Humphreys*, 881 S.W.2d at 944, or otherwise properly established to be the records reviewed below.

Simply, we have no means to verify that the documents tendered to this Court in camera are the same documents Relators tendered to the trial court. *See id.* Even assuming without deciding that Relators may supplement the mandamus record by submitting the records to this Court in camera, Relators failed to comply with the Texas Rules of Appellate Procedure when doing so.

Because the record in an original proceeding is assembled by the parties, this Court strictly enforces the authentication requirements of rule 52 to ensure the integrity of the record. *Meehan*, 2021 WL 2943938, at *1. Here, Relators did not file with this Court an affidavit or unsworn declaration executed by a person with knowledge of relevant facts swearing under penalty of perjury that the documents submitted to this Court in camera are true and correct copies of the original documents submitted to the trial court in camera. *See* TEX. R. APP. P. 52.7(a)(2); *Butler*, 270 S.W.3d at 759.

Where the content of the records is necessary to determine the propriety of a trial court's actions, it is incumbent upon a party seeking relief by mandamus to present this Court with a sufficient record. *Humphreys*, 881 S.W.2d at 945; *see Trujillo*, 2015 WL 799439, at *1; *see also In re Buholtz*, No. 05-21-00254-CV, 2021 WL 3160505, at *1 (Tex. App.—Dallas July 26, 2021, orig. proceeding) (mem. op.)

("Because relator has not submitted an adequate record, we are unable to conduct a meaningful review of his claims."); *In re Vann*, 05-20-01012-CV, 2021 WL 423168, at *1 (Tex. App.—Dallas Feb. 8, 2021, orig. proceeding [mand. denied]) (mem. op.) (same); *Lesher v. Coyel*, 435 S.W.3d 423, 431–32 (Tex. App.—Dallas 2014, pet. denied) (concluding appellant failed to preserve complaint regarding trial court's denial of appellant's motion to compel because appellant did not request the exhibits submitted to the trial court in camera be properly carried forward to the appellate court).

We acknowledge we have the power to order supplementation of the record or employ other means to secure there is an adequate record before us where no exigent circumstances exist to warrant otherwise.[5] But this was Relators' second chance to file a petition for writ of mandamus that complied with the Texas Rules of Appellate Procedure. Relators initially filed their petition for writ of mandamus on September 21, 2022. Their petition did not comply with the Texas Rules of Appellate Procedure in multiple respects. By order dated September 23, 2022, we struck Relators' September 21, 2022 petition, appendix, and mandamus record and also granted Relators' leave to refile a petition that complied with the Texas Rules

---

[5] *See, e.g.*, *In re Chubb Lloyd's Ins. Co. of Tex.*, No. 03-19-00156-CV, 2019 WL 1187347, at *1 (Tex. App.—Austin Mar. 13, 2019, orig. proceeding) (per curiam) (order) ("We are . . . unable to determine whether the documents that we are maintaining *in camera* are the same documents that the trial court reviewed *in camera*. . . . . Relator has twenty days from the date of this order to provide an order from the trial court confirming that the documents submitted *in camera* to this Court are the same [as those] the trial court reviewed.").

of Appellate Procedure by 5:00 p.m. on September 28, 2022. We cautioned Relators that their failure to refile the petition as permitted by our order might result in dismissal of this cause without further notice.

Fortunately for Relators, to reach our determination here we have a sufficient mandamus record because a review of the health care records is not critical to our determination. *See Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279. The outcome might have been otherwise had it been necessary for us to do so.

V.

Relators argue that the trial court abused its discretion because (1) RPI sought privileged documents and materials consisting of mental health and medical records of E.B. and mental health records of her mother, (2) RPI's request was overly broad and the records irrelevant and, even if not, RPI did not meet its burden to prove the applicability of the patient–litigant exception to privilege, and (3) the trial court "made no attempt to redact, delete, or otherwise protect other irrelevant information from unnecessary disclosure." Relators argue that they submitted the records at issue to the trial court for in camera review on three occasions (at a November 12, 2021 hearing on the motions to quash, in a May 4, 2022 email, and in a September 20, 2022 email).

In deciding the issues here, we are not writing without direction. Nearly thirty years ago, our supreme court announced the course a trial court must take to properly address these important privileges and the litigation exception to them.

In *R.K. v. Ramirez*, 887 S.W.2d 836 (Tex. 1994) (orig. proceeding), R.K. was a physician-defendant in a medical malpractice case. Initially, the plaintiffs alleged only generally that R.K.'s and other health care providers' negligence resulted in their son's "cerebral palsy, spastic quadriplegia, and mental retardation," brought on by asphyxia during R.K and others' delivery of the newborn. The plaintiffs sought records relating to R.K.'s treatment "for a medical, mental, or emotional condition" and the trial court obliged, denying R.K.'s request for protective relief based on the privileges in issue here. *Id*. at 839. At R.K.'s request, the Corpus Christi Court of Appeals granted mandamus relief, concluding, "A general allegation of negligence does not bring into issue the medical condition of [R.K.]. Without pleadings to indicate that [R.K.'s] condition was a basis of the claim, there was nothing before the trial court to support its ruling." *Id*. (citing and quoting *R.K. v. Ramirez,* 855 S.W.2d 204, 207 (Tex. App.—Corpus Christi 1993, orig. proceeding)).

Ultimately, the plaintiffs amended their pleadings "to specifically allege that (1) R.K.'s medical and emotional problems affected his ability to care for the child's mother, and (2) the clinic and hospital's selection of such an 'unfit and incompetent' person proximately caused the [plaintiffs'] damages." *Id*.[6] The trial court again rejected R.K.'s claims of privilege when his medical records were sought, and

---

[6] In their amended petition, the *Ramirez* plaintiffs alleged R.K. suffered from depression, serious mental and psychiatric problems, and drug usage, among other things. 887 S.W.2d at 839 n.3. These health care conditions, they pleaded, proximately caused the injuries, resulting in the damages they suffered. *Id*.

ordered production of the records. R.K. sought mandamus relief at the supreme court.

After tracing the history of the privileges now embodied in rules 509 and 510, and rejecting R.K.'s proposed interpretation of those rules, the supreme court charted the proper course. The court's lengthy disquisition merits repeating:

> [T]he patient-litigant exception to the privileges applies when a party's condition relates in a significant way to a party's claim or defense. Communications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an "ultimate" issue for a claim or defense, or if the condition is merely tangential to a claim rather than "central" to it. The scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense. This is accomplished, we believe, by requiring that the patient's condition, to be a "part" of a claim or defense, must itself be a fact to which the substantive law assigns significance. For example, an allegation that a testator is incompetent is an allegation of a mental "condition," and incompetence, if found, is a factual determination to which legal consequences attach: the testator's will is no longer valid. This approach is consistent with the language of the patient-litigant exception, Tex.R.Civ.Evid. 509(d)(4), 510(d)(5), because a party cannot truly be said to "rely" upon a patient's condition, as a legal matter, unless some consequence flows from the existence or non-existence of the condition. As a general rule, a mental condition will be a "part" of a claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself. In other words, information communicated to a doctor or psychotherapist may be relevant to the merits of an action, but in order to fall within the litigation exception to the privilege, the condition itself must be of legal consequence to a party's claim or defense.
>
> Even if the trial court is convinced that this first step is satisfied, when reviewing documents submitted *in camera,* the court must ensure that the production of documents ordered, if any, is no broader than necessary, considering the competing interests at stake. The scope of the exception only permits discovery of records "relevant to an issue of the ... condition of a patient." Tex.R.Civ.Evid. 509(d)(4), 510(d)(5).

–12–

Therefore, even if a condition is "part" of a party's claim or defense, patient records should be revealed only to the extent necessary to provide relevant evidence relating to the condition alleged. Thus courts reviewing claims of privilege and inspecting records *in camera* should be sure that the request for records and the records disclosed are closely related in time and scope to the claims made, *see Mutter v. Wood,* 744 S.W.2d 600, 601 (Tex. 1988), so as to avoid any unnecessary incursion into private affairs. *Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.*

. . . .

To summarize, the exceptions to the medical and mental health privileges apply when (1) the records sought to be discovered are relevant to the condition at issue, and (2) the condition is relied upon as a part of a party's claim or defense, meaning that the condition itself is a fact that carries some legal significance. Both parts of the test must be met before the exception will apply. Even then, when requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.

*Id.* at 842–43 (footnote omitted; emphasis added).[7]  At the outset of the inquiry, relevance alone is not enough: "[I]nformation communicated to a doctor or psychotherapist may be relevant to the merits of an action, but in order to fall within the litigation exception to the privilege, the condition itself must be of legal consequence to a party's claim or defense." *Ramirez,* 887 S.W.2d at 843.

---

[7] The determination whether the exception to the privilege applies is measured against the pleadings of the party who is argued to have relied on a party's physical, mental, or emotional condition as a part of the claim, whether her own or another party's. *Id.* at 844; *see In re Turney,* 525 S.W.3d 832, 839 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (citations omitted) ("The court reviews the pleadings to determine whether the requested medical records are relevant to a medical or mental condition at issue in the case.").  The operative pleadings here are E.B.'s and her mother's petitions, for it is these petitions in which RPI claims E.B. and her mother put their own mental health conditions in issue as a part of their claims when they each made a routine request for mental anguish damages in connection with their causes of action.

Even when the situation is to the contrary, and a mental health condition is a part of the claim, we must nevertheless respect the *Ramirez* court's focus on the duty of a trial court when confronted with a request for health records claimed to be privileged:

> We stress that the highly personal nature of this information places a heavy responsibility on the trial court to prevent any disclosure that is broader than necessary. *Trial courts must use great care when permitting discovery of such sensitive information, and should redact or delete those portions of medical and mental health records that concern matters beyond the scope of the exception.*

*Id.* at 844 (citations omitted; emphasis added); *see also In re Nance*, 143 S.W.3d 506, 514 (Tex. App.—Austin 2004, orig. proceeding) ("[I]t is a trial court's obligation to oversee and safeguard the records to ensure unnecessary matters are not disclosed.").

Here, the apparent basis of the trial court's orders is not significant to the threshold question a court must address when making a determination whether the litigation exception applies to lift the privilege. The records subpoenaed by RPI—regardless of their arguably overly broad sweep—do not relate to a pleaded "condition" that is a "part" of E.B.'s and her mother's claims in the manner required by *Ramirez* to trigger the exception to the mental health communications privilege. Notably, E.B. has made nothing more than a pedestrian request for mental anguish damages of the kind that ordinarily would flow from her injury in the vehicle rollover accident and her contemporaneous perception of her brother's death. That is also true for E.B.'s mother, whose records request was withdrawn by RPI before the trial

–14–

court nevertheless ordered their release—a matter we address below. A routine request for mental anguish damages is the type of allegation courts have consistently said does not form a part of the claim so as to trigger the exception to the mental health information privilege established by evidence rule 510. There is *no* psychological condition alleged by E.B. and her mother here that forms any part of their claims so as to carry legal significance, present an ultimate issue with regard to them, or to be central to their determination. This ends the inquiry in considering the patient-litigant exception to rules of evidence 509 and 510.

Yet, despite all authority to the contrary, it is just such a generic mental anguish claim RPI insists engages the litigation exception and deprives E.B. and her mother of their rule 510 mental health information privilege. Such a routine allegation by a plaintiff in a personal injury pleading does not waive the privilege under the litigation exception. *See, e.g., Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988) ("A routine allegation of mental anguish or emotional distress does not place the party's mental condition in controversy.").[8] This concept is implicit in and inseparable from the conclusion reached by the supreme court in *Ramirez*, and it is one that has been consistently followed. In *In re Whipple*, 373 S.W.3d 119, 123–24 (Tex. App.—San Antonio 2012, orig. proceeding), the court stated:

---

[8] The trial court clearly mistakenly believed that a general mental anguish claim permitted the disclosure of the records. During a hearing on Relators' motions to quash, the judge asked: "How do you justify saying that her mental health records shouldn't be discovered when you are making a mental anguish claim?" If unartfully, but well-put, Relators' counsel correctly responded: "Because routine allegations of mental anguish do not release everyone's mental health records."

Courts applying [*Ramirez*] have consistently found that a claim for mental anguish will not, standing alone, make a plaintiff's mental or emotional condition a part of their claim. *See Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988) (orig. proceeding); *In re Williams*, No. 10-08-000364-CV, 2009 WL 540961, at *5 (Tex. App.—Waco Mar. 4, 2009, orig. proceeding); *In re Pennington*, No. 02-08-00233-CV, 2008 WL 2780660, at *4 (Tex. App–Fort Worth July 16, 2008, orig. proceeding) (mem. op.); *In re Toyota Motor Corp.*, 191 S.W.3d 498, 502 (Tex. App.—Waco 2006, orig. proceeding); *In re Nance*, 143 S.W.3d 506, 512 (Tex. App.—Austin 2004, orig. proceeding); *In re Chambers*, No. 03-02-000180-CV, 2002 WL 1378132, at *4 (Tex. App.—Austin June 27, 2002, orig. proceeding); *In re Doe*, 22 S.W.3d 601, 610 (Tex. App.—Austin 2000, orig. proceeding). A routine allegation of mental anguish does not place a party's mental condition in controversy. *Coates*, 758 S.W.2d at 753. "The plaintiff must assert a mental injury that exceeds the common emotional reaction to an injury or loss." *Id*.

We, too, have acknowledged the same; *see C & L Flooring Installations v. Cochell*, No. 05-98-01919-CV, 2001 WL 915223, at *2 (Tex. App.—Dallas Aug. 15, 2001, no pet.). Our federal courts have recognized this consistency. *See In re Depuy Orthopaedics, Inc.*, No. 03-11-MD-2244-K, 2016 WL 6583654, at *3 (N.D. Tex. Jan. 5., 2016) (stating, in an order granting a party's motion to protect mental health records, "Texas courts consistently hold that claims for mental anguish alone do not make a plaintiff's mental or emotional condition a part of their claim.").

From these authorities we derive the following guiding factors and principles that apply to the undisputed facts here to determine whether a party, like RPI, has successfully invoked the litigation exception to the important privileges established by our rules of evidence:

(1) As the proponent of the privilege, RPI was required to demonstrate a mental health condition E.B and her mother are relying on as a part of their pleaded claims;

(2) A generic pleading for mental anguish damages does not alone qualify as a mental health condition in making the determination whether a mental health condition is a part of a claim;

(3) When RPI failed to demonstrate a condition described in paragraph (1), the inquiry ends and the privilege must stand. There is no need to consider anything more and no in camera tender or inspection is required or permitted;

(4) Only if RPI demonstrated a condition described in paragraph (1) was the trial court required to conduct an in camera review of the records to determine whether their content was within the scope of RPI's request;

(5) If those records are not within the scope of the request, they are privileged;

(6) If those records are within the scope of the request, then the court must conduct a careful examination of them and make a relevance determination, releasing only those records and only as is consistent with parameters set by *Ramirez* and other authorities.

Given the foregoing, the inescapable conclusion we must reach is this:

When RPI failed as a threshold matter to point to any pleading where either E.B. or her mother rely on a mental health condition as a part of their claims, the patient-litigant exception to the privileges established by rules 509 and 510 was not triggered and the privilege remains intact, and any further inquiry by the trial court was both unnecessary and unwarranted.

Whatever the nature of the records—whether medical or mental health—their

presence before the trial court was immaterial to the initial step of the trial court's

inquiry, where an in camera review is not necessary, not appropriate, and should not be conducted.

The trial court's apparent decisional basis is irrelevant in a decision that is not dependent in the first instance on the mental health records' presence in the trial court (or in this one)—where the initial inquiry must be whether a claimant in her pleadings relies on a mental health condition as a part of her claim.

The Relators' entitlement to relief is even more apparent in mother's case for a reason that even precedes the general analysis we have provided: At the time the district court ordered the release of mother's records to RPI, there was no request for them. This is undisputed in our record; it is a matter of fact on which all agree. Yet, the trial court ordered their production nonetheless. We find no legal basis for the proposition that a court may sua sponte order the release of a party's mental health records in a case like this one.

As an additional component of its argument that the patient-litigant exception applies, RPI claims E.B.'s bystander claim waives her assertion of privilege. Texas law provides that a bystander who witnesses a negligently inflicted serious or fatal injury may recover under a theory of bystander liability if (1) the bystander was located near the scene of the accident and not a distance away from it; (2) shock to the bystander resulted from a direct emotional impact upon the bystander from the sensory and contemporaneous observance of the accident victim, as contrasted with learning of the accident from others after its occurrence; and (3) the bystander and

the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Freeman v. City of Pasadena,* 744 S.W.2d 923, 923–24 (Tex. 1988) (quoting *Dillon v Legg*, 441 P.2d 912, 920 (Cal. 1968)). Although unclear, RPI appears to argue E.B.'s pleading of this cause of action in some way asserts a specific mental condition that she relies on in prosecuting her claim and that the very nature of the claim somehow sets it apart from other personal injury cases that generically request mental anguish damages as a component of the relief sought. RPI cites no supporting authority for this proposition. To establish this cause of action, E.B. has not pleaded any particular mental health condition she relies on that has resulted in treatment by a mental health practitioner. Nor has she alleged that such a condition forms a part of her claim for mental anguish damages. Too, "shock" in response to the contemporaneous perception of a loved one's death is a common human reaction, akin to the emotional anguish that accompanies one's own physical injury, for example. *See Coates*, 758 S.W.2d at 753 (allegation of a common emotional reaction to an injury is insufficient to place a person's mental condition in issue). We discern no way such an allegation can be said to plead the existence of a mental condition that is relied on by E.B as a part of her claim, thereby resulting in a waiver of the rule 510 privilege under the patient-litigant exception. And while the effects of that shock arguably may lead to a specific condition pleaded and relied on by a party, here there is nothing more than an ordinary claim for mental anguish damages, which is insufficient for the reasons

stated.  Thus, we decline to analyze E.B.'s bystander claim any differently than we do her claim based on her own physical injury.

Finally, although RPI does not formally assert this ground here, RPI generally asserted in the trial court that "sword-and-shield" waiver by offensive use of the mental health communications privilege occurred as a result of Relators' listing of these health care providers in their responses to requests for disclosure in the trial court.  This is unpersuasive for a number of reasons.

The "offensive use of privilege" or "sword-and-shield" waiver doctrine, provides that in asserting a privilege "[a] plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action." *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 108 (Tex. 1985) (quoting *Pavlinko v. Yale–New Haven Hosp.,* 470 A.2d 246, 251 (1984)).  In *Republic Ins. Co. v. Davis*, 856 S.W.2d 158 (Tex. 1993) (orig. proceeding), our supreme court established the boundaries of the general doctrine of offensive use waiver set forth in *Ginsberg*.  Noting that "offensive use waiver of a privilege should not lightly be found," *id*. at 163, the *Davis* court said:

> First, before a waiver may be found the party asserting the privilege must seek affirmative relief. Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought. Third, disclosure of the confidential

–20–

communication must be the only means by which the aggrieved party may obtain the evidence. If any one of these requirements is lacking, the trial court must uphold the privilege.

856 S.W.2d at 163 (footnotes omitted). RPI made no attempt to establish any of these factors in the trial court. While the first factor may be apparent here, RPI runs headlong into the second prong of the test. Here, it cannot reasonably be claimed that a failure to disclose the mental health records sought "would be outcome determinative of the cause of action asserted," and RPI has presented no argument that it would. A generic claim of mental anguish damages is not a cause of action, nor does any confidential communication, even if relevant, "go to the very heart of the affirmative relief sought." Indeed, the overly broad requests made by RPI was for all mental health records of E.B and her mother, not merely those related to the tragic event that claimed the life of mother's son who was E.B.'s brother. Further, in connection with the final offensive use waiver factor of *Davis*, RPI has not informed this Court or the trial court what relevant evidence it hopes to acquire from Relators' privileged health care records that it cannot otherwise obtain. The offensive use waiver doctrine is not a fishing license or a general permission to engage in a dredging operation, as RPI would have it be.

Supporting the view that this is RPI's purpose here, it is important to note that RPI relies only upon Relators' responses to RPI's requests for disclosure as the basis of its offensive use of privilege waiver argument, without any specific suggestion that whatever is contained in those records would be dispositive to the ability of

Relators to maintain their causes of action. But such contradictions in a position (if there were any here) provide an insufficient basis to invoke the doctrine of offensive use waiver. *Davis*, 856 S.W.2d at 163. ("A contradiction in position without more is insufficient."). To make RPI's waiver argument yet more untenable, Relators have repeatedly informed RPI and the trial court that they disclaim any reliance on the health care practitioners involved here, as RPI acknowledges in its response to the petition before us. *See* TEX. R. CIV. P. 193.5 (written discovery may be amended or supplemented in writing, among other ways). We do not believe the offensive use waiver doctrine is merely designed to be an end-run around rules 509 and 510. Instead, it is a narrow exception to privilege that operates in narrow circumstances not present here. To adopt RPI's interpretation of the offensive use waiver doctrine in our circumstances would require us to expand the doctrine beyond recognition. We decline their invitation to do so. We conclude that RPI has not shown a basis for or proof of waiver by offensive use.

Having considered and rejected RPI's arguments that the mental health privilege has been waived in this case, we conclude the trial court clearly abused its discretion in ordering the release of E.B.'s and her mother's mental health records and this requires us to grant Relators' petition because they have no adequate remedy by appeal.

## VI.

Like the trial court, we, too, have a "heavy responsibility" to take "great care" in deciding matters of the nature before us, lest we create a litigation world where "the privacy of the physician-patient relationship [is subjected] to casual breach by every litigant in single-minded pursuit of the last scrap of evidence which may marginally contribute to victory in litigation." *Ramirez*, 887 S.W.2d at 840 (quoting CHARLES T. MCCORMICK, MCCORMICK ON EVIDENCE § 105, at 391 (John W. Strong et al. eds., 4th ed. 1992)).

For the reasons set forth above, we conclude the trial court clearly abused its discretion, leaving Relators with no adequate remedy by appeal. As a result, Relators are entitled to the relief they seek.

In light of the approaching trial date, we order the trial court to forthwith vacate its orders denying the Relators' motions to quash and ordering the disclosure of the mental health information sought by RPI, and we vacate the portion of our September 23, 2022 order that granted a stay of those orders.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Pedersen, III, J., dissenting.

220938F.P05